[Civ. No. 16440.   First Dist., Div. Two.   Dec. 6, 1955.]

WILLIAM CORRIDAN, JR., a Minor, etc., et al., Plaintiffs and Respondents, v. A. G. ROSE, JR., et al., Defendants and Respondents; ZURICH GENERAL ACCIDENT AND LIABILITY INSURANCE COMPANY, LTD. (a Corporation), Intervener and Appellant.

Bronson, Bronson & McKinnon for Intervener and Appellant.

Moss, Lyon & Dunn, Gerold C. Dunn, Henry F. Walker and Wallace, Garrison, Norton & Ray as amici curiae on behalf of Intervener and Appellant.

James F. Boccardo and Edward J. Niland for Plaintiffs and Respondents.

Robert E. Hayes for Defendants and Respondents.

NOURSE, P. J.—In this negligence action instituted by the minor William Corridan, Jr., and his father William Corridan, Sr., against the minor's uncle A. G. Rose, Jr., who drove a tractor, which hit and seriously injured the minor, and the minor's grandfather A. G. Rose, Sr., allegedly coowner of the tractor with his son A. G. Rose, Jr., who allegedly was driving it as his father's agent, Zurich General Accident and Liability Insurance Company, hereinafter called Zurich, who had issued a policy of liability insurance to Rose, Sr. (which would also cover his employee in driving a tractor) was permitted to intervene and to defend on behalf of Rose, Jr., and Rose, Sr., the Zurich having alleged that such was necessary to prevent lack of defense and collusion. The verdict was for plaintiff against both Rose. Jr., and Rose, Sr. Zurich appeals from an order granting a new trial at the motion of defendant Rose, Jr. only.

At the time of the accident Rose, Sr., owned a ranch on Sutherland Avenue in Santa Clara County on which he lived himself and in separate houses his married son Rose, Jr., then age 24, and his daughter Mrs. Corridan with her son, the minor plaintiff Billy. The Roses, father and son, had always been in ranching operations together. Rose, Jr., also farmed for himself a separate piece of land. The tractor was kept in a barn on the ranch and was used mainly by Rose, Jr., in operating the ranch and also for outside work.

On the evening of May 26, 1951, Rose, Jr., was driving the tractor home from a nearby ranch on which he had worked with it for hire. When he was driving on the edge of Sutherland Avenue, Billy was riding his bicycle on the paved part of the road alongside the tractor. Billy fell from the bicycle, and a tractor tread went over his left leg, which had to be amputated below the knee. When thereafter Rose, Jr., in the

presence of Rose, Sr., gave information to a representative of Zurich, Rose, Jr., stated in substance that the tractor belonged to him, not to his father, that his father had bought it for him. He used the tractor not only on his father's farm but also on other jobs. When Billy was riding his bicycle alongside the tractor, Billy got a few feet ahead and suddenly turned his wheel and fell directly in front of the tractor. It happened so fast that Rose, Jr., did not know what caused Billy to fall. He was watching him all the time and keeping a good distance.

When the present action was brought against them, both Roses claimed coverage under the Zurich liability policy and tendered Zurich their defense. Zurich denied coverage of Rose, Jr., on the ground that he was not driving the tractor as an employee of his father, but offered to defend him on condition that Rose, Jr., would sign a "reservation of rights agreement" reserving for both sides the issue of coverage. Rose, Jr., refused to sign such an agreement and Zurich refused to defend him. For Rose, Sr., Zurich prepared an answer alleging that the tractor involved in the accident belonged to Rose, Jr., and that he was not driving it as an employee or agent of Rose, Sr. Rose, Sr., refused to sign said answer on the ground that it did not state the true facts. Zurich then withdrew from his defense on the ground of collusion and lack of cooperation.

As stated before, Zurich was permitted to intervene on behalf of defendants and it was ordered that its denials and allegations as to the original complaint would stand as answer on behalf of Rose, Sr., and Rose, Jr. The complaint in intervention alleged among other things the intervener's denial of the coverage of Rose, Jr., the withdrawal from the defense of Rose, Sr., because of collusion and lack of cooperation, and intervener's interest in the success of defendants because a judgment against them would under section 11580 of the Insurance Code in an action on the policy against intervener be conclusive with respect to the liability of defendants and the amount of damages, although not as to intervener's liability on the policy. The necessity of intervention was predicated on the alleged collusion and danger of further collusion in the defense by Rose, Sr., and Rose, Jr., with plaintiffs. A demurrer of Rose, Jr., to the complaint in intervention was overruled. The answers of all other parties to the complaint in intervention deny collusion, and the Roses allege that they owned the tractor together and that at the time of the accident

Rose, Jr., had used it at the request of Rose, Sr. Rose, Sr., stated that the untrue allegations as to this point in the draft complaint of Zurich were the reason for his refusal to sign. At the trial objections of Zurich to all evidence with respect to issues formed by said answers to the complaint in intervention were sustained and these issues were not submitted to the jury.

At the beginning of the trial both Rose, Sr., and Rose, Jr. notified Zurich that plaintiff offered to settle for $100,000 (the limit of the coverage in this case), that the offer was reasonable and that they demanded acceptance and payment by Zurich. Zurich refused. At the trial Rose, Jr., testified that when the accident happened he was turning the tractor from the shoulder of the road more into the paved part to avoid certain pear trees, that in watching the trees he did not look out for Billy and that he became aware of him again only when Billy was under the tractor; he did not know what happened to Billy up to that moment. Billy testified that the tractor hit the hind wheel of his bicycle. Rose, Sr., testified that the owner of the farm from which Rose, Jr., was returning when the accident happened had asked Rose, Sr., for assistance in certain farming operations with the tractor, that Rose, Sr., had promised to send his son with it and and had arranged for the price. Both he and Rose, Jr., testified that they owned the tractor together. After the accident Rose, Sr. made the large final payment on it and thereafter the bill of sale was made out in their combined names.

After verdicts of $40,000 in behalf of Billy and of $6,000 in behalf of his father all parties moved for a new trial. The motions of Zurich and Rose, Sr., were withdrawn. The motion of plaintiffs was denied, but the motion of Rose, Jr., was granted. The notice of motion of Rose, Jr., stated several grounds but the only one urged was error in permitting Zurich to intervene. No other basis for the granting of the new trial is suggested on appeal. Respondents urge that Zurich was not a party to the order granting a new trial and not a party aggrieved by it and that for these reasons its appeal must be dismissed and that otherwise the order must be affirmed because the admission of Zurich as intervener was erroneous, also because its participation in the trial injected insurance into the picture and because the litigation of the allegations of the complaint in intervention was excluded from the trial. It may be noted that not only Rose, Jr., but also

plaintiffs defend the order, which has set aside the judgment they obtained.

■ The contention that appellant is not a party to the judgment or not a party aggrieved is on its face without merit. By the order granting leave to intervene it was determined implicitly that intervener had an interest in the matter in litigation, in the success of the defendants and in the prevention of a judgment for plaintiffs caused by lack of defense or collusion. Under section 387 of the Code of Civil Procedure Zurich by said intervention became a party to the action uniting with the defendants in resisting the claims of plaintiffs and obtained all rights of a party defendant, including the right to appeal. (*People* v. *Perris Irr. Dist.*, 132 Cal. 289 [64 P. 399, 773]; *Drinkhouse* v. *Van Ness*, 202 Cal. 359, 371 [260 P. 869]; 2 Witkin Cal. Proc., 1095.) Insofar as intervener's interest was to take part in the trial to prevent a judgment for plaintiffs caused by lack of defense or collusion, the granting of a new trial on the ground that it was error to permit it so to take part, injuriously affected said interest and in that respect intervener was evidently a party aggrieved. Moreover prior to the trial defendants had declared to intervener that the claim against them in their opinion was worth at least $100,000 and under those circumstances intervener might well have a reasonable interest to limit any possible claim on the insurance policy to the amount of the verdicts which were less than half of defendants' estimate and it might reasonably doubt whether the motion of Rose, Jr., was made for the purpose of opening the possibility of lower or of higher recoveries. Respondents' argument that appellant could not be aggrieved by an order which set aside a judgment against one of the defendants is therefore wholly fictitious. (It is symptomatic that on appeal plaintiffs defend the order granting a new trial as strongly as does Rose, Jr.)

■ ". . . a party may appeal from a judgment apparently in his favor which is actually against him" 3 Witkin California Procedure 2182, citing as example *Quint* v. *McMullen*, 103 Cal. 381, 383 [37 P. 381].

We then come to the principal question on this appeal, to wit whether it was error justifying the granting of a new trial to permit Zurich to intervene and to take part in the trial in the manner stated. There is no authority directly in point in this state and little authority elsewhere. In *Pennix* v. *Winton*, 61 Cal.App.2d 761 [143 P.2d 940, 145 P.2d 561] this court decided that an attorney defending an insured in behalf

of the insurer, could not take at the trial a position adverse to said insured by interjecting the issue of collusion in the personal injury action, but we expressly left undecided (at p. 775) the question here involved. In *Neuman* v. *Eddy,* 15 La.App. 45 [130 So. 247] the insurer had intervened in the personal injury action on the ground of collusion and interposed its own defense in behalf of defendants, but it does not appear that there was any opposition to the intervention and the opinion was with respect to the intervention concerned with the proof of the collusion and the liability of the insurer which issues were tried in the same action. In *Brune* v. *McDonald,* 158 Ore. 364 [75 P.2d 10] the sustaining of a demurrer to the complaint in intervention of the insurer in a personal injury action was upheld, but there the insurer, alleging collusion, did not intervene for the purpose of uniting in the defense but to have the prosecution of the negligence action enjoined pending decision of the rights under the policy and thereafter to have all action on the policy enjoined. One of the grounds of the decision was that there was no authority for such an injunction (p. 14). However, it was also held that the insurer did not have the interest required for intervention because on the basis of the allegation of the complaint in intervention (as to the invalidation of the policy) the insurance company would not become liable even if plaintiff recovered (p. 13). In *Krenitsky* v. *Ludlow Motor Co.,* 276 App. Div. 511 [96 N.Y.S.2d 102] an order denying an insurer who had disclaimed liability leave to intervene in a wrongful death action against the insured after default judgments for plaintiffs were upheld on the ground that it was the position of the insurer that it had no interest to be protected and that by disclaiming liability and refusing to defend it had waived all rights to intervene if it had ever had any. In these few outside cases there seems to be a preponderance of the view that an insurer who disclaims liability on his policy has no interest justifying intervention in the action against his insured. This view is in accord with the general principles with respect to the interest required for intervention in this state.

Although section 387 of the Code of Civil Procedure provides for a wide right of intervention by ". . . any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, . . ." this right has been strictly limited in the decisions defining the "interest" mentioned in said section. So it is said in *Allen* v.

*California Water & Tel. Co.,* 31 Cal.2d 104, 109 [187 P.2d 393]:

"The 'interest' mentioned in section 387 which entitles a person to intervene in a suit between other persons must be 'in the matter in litigation and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment' (*Elliott* v. *Superior Court,* 168 Cal. 727 [145 P. 101]); it must be 'direct and not consequential' (*Isaacs* v. *Jones,* 121 Cal. 257, 261 [53 P. 793, 1101])."

In *Bechtel* v. *Axelrod,* 20 Cal.2d 390 [125 P.2d 836] it was held on the basis of said rules that the wife of the accommodation maker of a note, could not intervene in the action on the note brought against her husband, to obtain a declaration that their community property could not be subjected to payment of the obligation, because she "did not possess an interest legally sufficient to sustain her intervention . . . The wife would neither gain nor lose by the direct legal operation and effect of a money judgment rendered against her husband . . . Granting that it was plaintiff's *intention* in the event of his recovery, to attempt to satisfy his judgment from the community property, it is entirely conceivable that the defendant . . . might decide to discharge the indebtedness by payment from his separate funds or that the plaintiff might not in fact initiate proceedings to enforce collection. From these observations it is manifest that the intervener's interest in the instant action was remote and contingent and was not of the direct and immediate character required by law to support her intervention." (Pp. 392-393.) The same applies *a fortiori* to this case. ▓ The plaintiff's claim against appellant would not be decided by the judgment in the negligence action alone but would be contingent on the policy coverage which appellant denies. *Drinkhouse* v. *Van Ness,* 202 Cal. 359 [260 P. 869] and *Belt Casualty Co.* v. *Furman,* 218 Cal. 369 [23 P.2d 293] on which appellant relies are distinguishable. In the Drinkhouse case the intervener, the surety on a redelivery bond who intervened in the claim and delivery action when the insolvent defendant abandoned the defense of said action, did not deny its liability as surety but based its intervention on the existence of the liability. In the Belt Casualty case, interveners who in a negligence action had obtained a judgment against the insured intervened in an action of the liability insurer against the insured to rescind the insurance on the ground of lack of cooperation; the rights

of the interveners against the insurance company were solely dependent on the result of the action in which they intervened, their damage claim having been litigated, and they did not, as does the appellant, advance any contention in derogation of their interest. Moreover it does not appear that in either of the two cases the sufficiency of the *interest* of the interveners was attacked.

Two additional grounds militate against the intervention permitted in this case. Appellant did not desire but actively opposed decision of its liability on the policy in the same action, so that the intervention could not serve its normal main purpose which is to obviate delay and multiplicity of actions (*Belt Casualty Co.* v. *Furman, supra,* at p. 362) and the intervention interjected insurance in the damage action, a result to be avoided if not necessitated by more weighty considerations. We conclude that the permission to intervene and to take part in the trial was error.

■ Appellant urges that even if the intervention was erroneously permitted it did not prejudice Rose, Jr. Considering the position taken by Rose, Jr., at the trial, and the verdict, low compared to Rose, Jr.'s expectation, this contention might well have some merit, but the point has been decided by the trial court against appellant in granting the new trial. ''Whether or not the rights of the moving party were prejudiced by an error of law occurring at the trial is a matter which rests so completely within the discretion of the trial judge that an appellate court will not interfere with his action in granting a motion for a new trial upon that ground except for a manifest abuse of discretion.'' (*Brignoli* v. *Seaboard Transp. Co.,* 29 Cal.2d 782, 792 [178 P.2d 445].) We cannot say that the presence of intervener insurer at the trial cannot possibly have been prejudicial and that therefore the order appealed from was a manifest abuse of discretion.

Order affirmed.

Dooling, J., and Kaufman, J., concurred.

A petition for a rehearing was denied January 5, 1956, and the petition of Intervener and Appellant for a hearing by the Supreme Court was denied February 1, 1956. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.