[No. B184772. Second Dist., Div. Six. Oct. 15, 2007.]

THE PEOPLE ex rel. GREGORY D. TOTTEN, as District Attorney for the County of Ventura, Plaintiff and Respondent, v.
COLONIA CHIQUES et al., Defendants.
GABRIEL ACOSTA et al. Interveners and Appellants.

34

COUNSEL

Kenneth I. Clayman, Public Defender, and Michael C. McMahon, Chief Deputy Public Defender, for Interveners and Appellants.

Neil Quinn for Isidro Campos as Amicus Curiae on behalf of Interveners and Appellants.

Gregory D. Totten, District Attorney, Michael D. Schwartz, Assistant District Attorney, and Karen Wold, Deputy District Attorney, for Plaintiff and Respondent.

## OPINION

YEGAN, J.—Gabriel Acosta and Beatriz Orozco appeal from a judgment granting a permanent injunction against Colonia Chiques, a criminal street gang, its active members, and all persons in active concert or participation with the gang. The injunction applies only to a defined area of the City of Oxnard designated as the "Safety Zone." Colonia Chiques is the only party named in the complaint and the injunction.

Appellants contend that (1) Colonia Chiques is not a jural entity capable of being sued; (2) the judgment cannot operate against nonparties to the action; (3) the enjoined nonparties are indispensable parties required to be joined as defendants; (4) the injunction improperly prohibits specified conduct of nonparties irrespective of whether that conduct is undertaken with or for Colonia Chiques; (5) the trial court's expressed purpose for issuing the injunction is improper and invalidates the injunction; (6) the associational rights of enjoined persons are impermissibly burdened by a provision prohibiting them from knowingly associating with Colonia Chiques members; (7) a curfew provision is unconstitutional because it is vague, overbroad, and impermissibly burdens the right to travel; (8) the injunction is unconstitutionally vague because it does not describe the enjoined nonparties with sufficient particularity; (9) a provision relating to open containers of alcoholic beverages is overbroad; and (10) an "opt-out provision," whereby any enjoined person may move to be dismissed from the action, is invalid.[1]

---

[1] For the first time in their reply brief, appellants argue: "[The injunction] violates the Fourth Amendment because it operates much like a general warrant to stop and detain persons to

We conclude that the curfew provision is unconstitutionally vague. Accordingly, we reverse the judgment to the extent that it requires the enjoined persons to comply with the curfew provision. In all other respects, we affirm.

### Factual and Procedural Background

Colonia Chiques is the largest, most violent criminal street gang in the County of Ventura. The gang, which has approximately 1,000 members, is active in the City of Oxnard. Its activities include the sale of controlled substances, graffiti vandalism, robberies, assaults, and homicides.[2]

Appellants do not dispute that the activities of Colonia Chiques constitute a public nuisance. They acknowledge that "the City of Oxnard has been plagued by robberies, assaults, vandalism, and narcotics sales, many of which are gang-related." They describe Colonia Chiques as "a large group of 'gang-bangers' engaged in nuisance activity in the 'Colonia' barrio of Oxnard." Appellants declare: "The nuisance is well-documented. Much of the nuisance involves violent and serious felony offenses perpetrated by persons associated in one way or another with Colonia Chiques. Other components of the nuisance involve the commission of misdemeanors and otherwise lawful conduct carried out in an offensive and disruptive manner."

In March 2004 respondent filed a complaint seeking a permanent injunction against Colonia Chiques and Does 1 through 500 to abate a public nuisance. The complaint stated that Colonia Chiques is an "Unincorporated Association." Although the complaint did not name appellants as codefendants, it named Orozco as a member of the gang, and she was personally served with a copy of the complaint on behalf of the gang. Personal service was also made on 13 other persons named as gang members in the complaint. In addition, Colonia Chiques was served by publication.

In May 2004 a dismissal was entered against Does 1 through 500. The dismissal left Colonia Chiques as the sole defendant.

In June 2004 the trial court issued a preliminary injunction, which was served on appellants. In July 2004 appellants were allowed to intervene on the defendant Colonia Chiques side.

---

serve them with the injunction or to enforce it[s] terms and conditions. . . . [¶] For the same reasons, the injunction authorizes serious invasions of privacy." These arguments are waived because appellants failed to raise them in their opening brief. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788].)

[2] Our discussion of the factual background in no way relies upon the declaration of Detective Neail Holland, dated March 18, 2004. At respondent's request, we augmented the record to include the Holland declaration. The declaration was filed in support of respondent's request for a preliminary injunction. The declaration was never offered into evidence at the trial on the permanent injunction.

Following a 14-day court trial, an amended statement of decision was filed. The trial court found that the activities of Colonia Chiques had created a public nuisance in a 6.6-square-mile area of Oxnard designated as the "Safety Zone." During the trial, an expert on gangs testified that the boundaries of the Safety Zone were "the minimally [*sic*] geographical area that was necessary to . . . significantly abate the nuisance activities and the criminal conduct of Colonia Chiques." The expert considered more than 2,000 crimes committed by Colonia Chiques gang members in the City of Oxnard. These crimes included assaults with a deadly weapon, the firing of firearms at residences, witness intimidation, extortion, and vandalism. The crimes also included 140 robberies committed from 2000 through March 2004 and 166 narcotics offenses committed from 2003 through March 2004. In addition, the expert considered 39 homicides committed in the City of Oxnard between 1992 and March 2004 that involved Colonia Chiques gang members as either victims or suspects.

In its amended statement of decision, the trial court stated: "[T]he Court does find that the significant number of violent assaults, homicides, narcotics activity, drive-by shootings and vandalism caused by the Colonia Chiques Gang is . . . sufficient to establish a finding that the Colonia Chiques have created and have become a public nuisance [within the Safety Zone] which, on constitutional grounds, justifies the issuance of a permanent injunction to abate." The trial court concluded "that our system of justice must not let the bullies and predators in our society, using the armor of Constitutional protection, to have free range to victimize the innocent, terrorize our communities and threaten public safety."

The judgment, filed on June 1, 2005, permanently enjoins Colonia Chiques "and its active members, as well as all persons who participate with or act in concert with the Colonia Chiques in more than a nominal, passive, inactive or purely technical way," from engaging in the following activities within the Safety Zone: intimidating witnesses, associating with known Colonia Chiques members, possessing guns or dangerous weapons "in public view or anyplace accessible to the public," engaging in fighting, using gang gestures, wearing gang clothing, possessing controlled substances without a prescription, possessing an open container of an alcoholic beverage "[a]nywhere in public view or [in] anyplace accessible to the public," painting graffiti, possessing graffiti tools, trespassing "on any real property not open to the general public," being "outside" between 10:00 p.m. and sunrise, acting as a lookout to warn of the presence of a law enforcement officer, and failing to obey all laws that "prohibit the commission of acts which create a public nuisance."

The judgment includes an "opt-out provision" that permits a Colonia Chiques member who has been served with the permanent injunction to

"move to be dismissed from this action." The injunction is unenforceable against a person who has been dismissed pursuant to this provision.

In issuing the preliminary injunction, the trial court ordered that only persons personally served with a copy of the injunction would be subject to arrest and punishment for violating its provisions. In an apparent oversight, the trial court did not reiterate this order when it issued the permanent injunction. The Oxnard Police Department, however, has stated that the permanent injunction will be enforced only against persons who have been served with a copy of the injunction: "[The gang injunction is] enforceable ONLY AGAINST GANG MEMBERS who have been SERVED, and who are in the SAFETY ZONE, and in violation of one or more of the prohibitions as outlined in the injunction."[3] For purposes of this appeal, we assume that the permanent injunction will be so enforced.[4] Respondent's brief includes a list of 142 persons who have been served with a copy of the permanent injunction.

*Standard of Review*

This appeal presents issues of pure law and we exercise our independent review. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1136–1137 [60 Cal.Rptr.2d 277, 929 P.2d 596] (*Acuna*).)

*Colonia Chiques Is a Jural Entity Capable of Being Sued*

Appellants contend that Colonia Chiques is not "a distinct jural entity . . . capable of suing or being sued as an unincorporated association." This contention is without merit. Colonia Chiques may be sued as an unincorporated association pursuant to Code of Civil Procedure section 369.5, subdivision (a),[5] which provides: "A partnership or other unincorporated association, whether organized for profit or not, may sue and be sued in the name it has assumed or by which it is known."

■ "The criteria applied to determine whether an entity [is capable of being sued as] an unincorporated association are no more complicated than (1) a group whose members share a common purpose, and (2) who function

---

[3] The statement appears on the Oxnard Police Department's Web site at <http://www.oxnardpd.org/news/newsdetail.asp?NewsID=135> (as of Oct. 15, 2007). Pursuant to Evidence Code sections 452, subdivision (h), and 459, we take judicial notice of the statement.

[4] We therefore need not consider whether constitutional problems would arise if the injunction were enforced against persons who had not been served with a copy of the injunction.

[5] All statutory references are to the Code of Civil Procedure unless otherwise stated.

under a common name under circumstances where fairness requires the group be recognized as a legal entity." (*Barr v. United Methodist Church* (1979) 90 Cal.App.3d 259, 266 [153 Cal.Rptr. 322].) Colonia Chiques meets this criteria.

In *Acuna, supra*, 14 Cal.4th 1090, our Supreme Court recognized in dictum that injunctive relief may be granted against a criminal street gang. In *Acuna* gang members, but not the criminal street gang, were named as defendants in an action brought by a city to abate a public nuisance. In rejecting the defendants' contention that they could not be bound by a preliminary injunction, the Supreme Court reasoned: "The City's evidence in support of preliminary equitable relief demonstrated that it was the gang itself, acting through its membership, that was responsible for creating and maintaining the public nuisance in Rocksprings. Because the City *could* have named the gangs themselves as defendants and proceeded against them, its decision to name individual gang members instead does not take the case out of the familiar rule that both the organization and the members through which it acts are subject to injunctive relief." (*Id.*, at p. 1125.)[6]

For the first time on appeal, appellants argue that Colonia Chiques is not a jural entity capable of being sued because it was not formed for a lawful purpose. Appellants rely on Corporations Code section 18035, subdivision (a), which provides: " 'Unincorporated association' means an unincorporated group of two or more persons joined by mutual consent for a common lawful purpose, whether organized for profit or not." Section 18035, subdivision (a), was added to the Corporations Code in 2004. (Stats. 2004, ch. 178, § 10.) It became effective on January 1, 2005, more than seven years after *Acuna* was decided. It replaced Corporations Code former section 24000, subdivision (a), which omitted the "lawful purpose" language: " '[U]nincorporated association' means any partnership or other unincorporated organization of two or more persons, whether organized for profit or not, but does not include a government or governmental subdivision or agency." Section 24000 was repealed effective January 1, 2005. (Stats. 2004, ch. 178, § 17.)

The characterization of Colonia Chiques as a criminal street gang does not necessarily mean that its sole purpose is to engage in criminal activity. In addition to its criminal purposes, the gang may also engage in lawful activities. Appellants' new theory that Colonia Chiques was not formed for a lawful purpose involves an issue of fact. Had appellants raised this theory in the trial court, the facts could have been fully developed. The case was tried after Corporations Code section 18035, subdivision (a), became effective, so

---

[6] " 'Even if properly characterized as dictum, statements of the [California] Supreme Court should be considered persuasive. [Citation.]' [Citation.]" (*Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1169 [78 Cal.Rptr.2d 819].)

appellants have no excuse for not raising the "lawful purpose" issue below. Because appellants' "new theory involves an issue of fact . . . and the facts to support the theory were not developed below, we find the argument was waived for failure to raise it in the trial court." (*City of Merced v. American Motorists Ins. Co.* (2005) 126 Cal.App.4th 1316, 1327 [24 Cal.Rptr.3d 788]; see also *Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167 [143 Cal.Rptr. 633] ["failure to raise a point in the trial court constitutes [a] waiver" except "where the theory presented for the first time on appeal involves only a legal question determinable from facts which not only are uncontroverted in the record, but which could not be altered by the presentation of additional evidence"].)

■ In any event, even if Colonia Chiques had not been formed for a lawful purpose, it still would have been capable of being sued for injunctive relief as an unincorporated association under Code of Civil Procedure section 369.5, subdivision (a). The definition of "unincorporated association" in Corporations Code section 18035 does not necessarily apply to section 369.5, subdivision (a). Section 18035 appears in chapter 1 of title 3 of the Corporations Code. Corporations Code section 18000, which appears in the same chapter, provides that "the definitions in this chapter govern the construction of this title." Thus, those definitions do not govern the construction of section 369.5, which appears in chapter 1 of title 3 of the Code of Civil Procedure.

It is highly unlikely that the Legislature intended that a criminal street gang could use Corporations Code section 18035, subdivision (a), as a shield against the People's request for injunctive relief. In enacting the California Street Terrorism Enforcement and Prevention (STEP) Act (Pen. Code, §§ 186.20–186.33), the Legislature contemplated that criminal street gangs would be capable of being sued. Penal Code section 186.22a, subdivision (a), part of the STEP Act provides: "Every building or place used by members of a criminal street gang" for certain types of criminal conduct "is a nuisance which shall be enjoined, abated, and prevented, and for which damages may be recovered, whether it is a public or private nuisance." Penal Code section 186.22a, subdivision (c), provides: "Whenever an injunction is issued pursuant to subdivision (a), or Section 3479 of the Civil Code [the general nuisance statute], to abate gang activity constituting a nuisance, the Attorney General may maintain an action for money damages on behalf of the community or neighborhood injured by that nuisance. Any money damages awarded shall be paid by or collected *from assets of the criminal street gang* or its members that were derived from the criminal activity being abated or enjoined." (Italics added.) Money damages could not be collected "from assets of the criminal street gang" unless the gang had been named as a defendant in the action brought by the Attorney General. (*Ibid.*)

If criminal street gangs were not capable of being sued, the Legislature in effect would have granted them immunity from damages for their criminal activities. This result would be contrary to the legislative intent expressed in Penal Code section 186.21, part of the STEP Act: "The Legislature . . . finds that the State of California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities, both individually and collectively, present a clear and present danger to public order and safety and are not constitutionally protected. . . . It is the intent of the Legislature in enacting this chapter to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs. The Legislature further finds that *an effective means of punishing and deterring the criminal activities of street gangs is through forfeiture of the profits, proceeds, and instrumentalities acquired, accumulated, or used by street gangs*." (Italics added.) The profits accumulated by criminal street gangs would not be subject to forfeiture if the gangs were immune from civil suits.

" '[S]tatutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than technical and that will lead to a wise policy rather than to mischief or absurdity [citation].' [Citation.]" (*County of Orange v. Barratt American, Inc.* (2007) 150 Cal.App.4th 420, 432–433 [58 Cal.Rptr.3d 542].) In view of the STEP Act, it would border on absurdity to conclude that, by the 2004 addition of Corporations Code section 18035, subdivision (a), the Legislature intended to shield criminal street gangs from liability and injunctive relief by rendering them immune from civil suits.

We also observe that it is simply not practical to require respondent to name Colonia Chiques gang members individually as defendants. There are approximately 1,000 members, and membership is continually changing. New members are joining the gang, while old members are leaving it or becoming inactive. If the gang could not be sued, respondent would have to bring a new action for injunctive relief against each new member. The Legislature surely did not intend to impose such an onerous burden on officials who are trying to mitigate California's "state of crisis which has been caused by violent street gangs." (Pen. Code, § 186.21.)[7]

---

[7] In *People ex rel. Reisig v. Broderick Boys* (2007) 149 Cal.App.4th 1506, 1520–1522 [59 Cal.Rptr.3d 64], the Third District Court of Appeal reached a conclusion contrary to the views expressed in this opinion. The Third District held that a criminal street gang is not capable of being sued for injunctive relief as an unincorporated association where "[t]he record does not show that [the gang] . . . was formed, at least in part, for a common lawful purpose." (*Id.*, at

*Nonparties Are Bound by the Injunction*

By intervening, appellants became parties to the action. "Under section 387 . . . [the intervener] by said intervention became a party to the action uniting with the defendants in resisting the claims of plaintiffs and obtained all rights of a party defendant, including the right to appeal. [Citations.]" (*Corridan v. Rose* (1955) 137 Cal.App.2d 524, 528 [290 P.2d 939].) Section 387, subdivision (a), provides: "An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons . . . by uniting with the defendant in resisting the claims of the plaintiff . . . ." "An intervening party is accordingly 'to be regarded as a plaintiff or as a defendant in the action . . . [depending upon] the party for whose success he seeks to intervene, . . .' [Citation.]" (*Timberidge Enterprises, Inc. v. City of Santa Rosa* (1978) 86 Cal.App.3d 873, 879 [150 Cal.Rptr. 606].)

Appellants, therefore, are to be regarded as defendants in the action. As defendants, they lack standing to claim that the judgment cannot operate against nonparties. "A party must assert his own legal rights and interests and cannot rest his claim to relief on the rights or interests of third parties. [Citation.]" (*Estate of Hart* (1984) 165 Cal.App.3d 392, 396, fn. 2 [209 Cal.Rptr. 272]; see also *Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1128 [269 Cal.Rptr. 844] [appellants lacked standing to assert error where they "did not suffer any of the purported harm" and therefore "were not aggrieved"].)

In any event, the injunction properly encompassed nonparties who were active members of Colonia Chiques or who acted in concert with the gang. "Ordinarily only the parties to an action and their successors are bound by a judgment given in an action *inter partes.* In matters of injunction, however, it has been a common practice to make the injunction run also to classes of persons through whom the enjoined party may act, such as agents, servants, employees, aiders, abetters, etc., though not parties to the action, and this practice has always been upheld by the courts, and any of such parties violating its terms with notice thereof are held guilty of contempt for disobedience of the judgment. But the whole effect of this is simply to make the injunction effectual against all through whom the *enjoined party* may act, and to prevent the prohibited action by persons acting in concert with or in support of the claim of the *enjoined party*, who are in fact his aiders and abetters." (*Berger v. Superior Court of Sacramento County* (1917) 175 Cal. 719, 721 [167 P. 143], some italics omitted; see also *In re Berry* (1968) 68

p. 1521.) As we have indicated in the text, it is unlikely that the Legislature would agree with this holding. To the extent that *Broderick Boys* is contrary to the views expressed in this opinion, we disagree with it.

Cal.2d 137, 155–156 [65 Cal.Rptr. 273, 436 P.2d 273] ["We recognize that the direction of injunctive orders to persons 'in active concert or participation with' specifically named parties defendant is approved by long-standing custom and practice, [fn. omitted] and we agree that an ascertainable class of persons is described by such language."]; *In re Lennon* (1897) 166 U.S. 548, 554 [41 L.Ed. 1110, 17 S.Ct. 658, 660] ["To render a person amenable to an injunction it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice."].)

Appellants contend: "Because this injunction enjoins non-parties without evidence or findings that the non-party has engaged in nuisance-related misconduct, it is overbroad and unauthorized." But appellants do not dispute that Colonia Chiques has engaged in nuisance-related misconduct. It was therefore proper for the trial court to enjoin nonparties who were active members of the gang or who were acting in concert with it. (*Berger v. Superior Court of Sacramento County, supra,* 175 Cal. at p. 721.)

### The Enjoined Nonparties Are Not Indispensable Parties

Appellants contend that the enjoined nonparties are indispensable parties required to be joined as defendants pursuant to section 389.[8] Appellants allege: "The failure to comply with section 389 is jurisdictional and the court may not proceed without bringing the absent parties in."

Appellants are apparently taking the position that all of the 1,000 members of Colonia Chiques were required to be joined as defendants. Their joinder was not required: "It is well established that an injunction may run to classes

---

[8] Section 389 provides in relevant part: "(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.

"(b) If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder."

of persons through whom the enjoined party may act, such as agents, servants, employees, aiders and abettors, though they were not parties to the action [citation]." (*Pitchess v. Superior Court* (1969) 2 Cal.App.3d 653, 656 [83 Cal.Rptr. 41]; see also *Berger v. Superior Court of Sacramento County, supra*, 175 Cal. at p. 721.)

### The Injunction Properly Prohibits Specified Conduct of Nonparties Irrespective of Their Intent

Appellants assert that a nonparty's ". . . conduct may only be enjoined if the non-party *is acting with or for the enjoined defendant.*" Appellants contend that the injunction improperly prohibits specified conduct of the enjoined nonparties irrespective of whether that conduct is undertaken with the intent of furthering the purposes of Colonia Chiques.

A similar contention was rejected by our Supreme Court in *Acuna, supra*, 14 Cal.4th 1090. As previously discussed, in *Acuna* the trial court issued a public nuisance abatement preliminary injunction against individual members of a criminal street gang. The gang members, who were named as defendants, complained that "they may not be bound by the injunction except on proof that each possessed 'a specific intent to further an unlawful aim embraced by [the gang].' " (*Id.*, at pp. 1122–1123.) Our Supreme Court concluded that "such individualized proof" is not a condition to the entry of injunctive relief "based on a showing that it is the gang, acting through its individual members, that is responsible for the conditions prevailing in [the affected area]." (*Id.*, at p. 1125.)

Here, as in *Acuna*, respondent's evidence established that Colonia Chiques, acting through its members and associates, was responsible for creating and maintaining the public nuisance within the Safety Zone. Accordingly, "both the organization and the members through which it acts are subject to injunctive relief." (*Acuna, supra*, 14 Cal.4th at p. 1125.) The injunction, therefore, may properly prohibit specified conduct of gang members irrespective of whether that conduct is undertaken with the intent of furthering the purposes of Colonia Chiques.

### The Trial Court's Expressed Purpose in Issuing the Injunction Does Not Invalidate the Injunction

In its statement of decision, the trial court declared, "The purpose of this injunction is not only to significantly curtail Colonia Chiques's public nuisance activities, but also to assist in effecting fundamental change in Colonia Chiques's ability to attract new members and keep current members." Appellants contend that this purpose constitutes "an impermissible

ulterior motive that taints the court's exercise of discretion" because the right to associate with Colonia Chiques "is constitutionally protected" under the First Amendment.

■ We do not review the trial court's motives, ulterior or otherwise. Nor do we review the trial court's reasoning. We review its action. (See, e.g., *People v. Gibson* (1987) 195 Cal.App.3d 841, 853 [241 Cal.Rptr. 126], citing 9 Witkin, Cal. Procedure (3d ed. 1985) § 259, p. 266; see now 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 340, pp. 382–383.) In any event, appellants' contention is without merit. In *Acuna, supra*, 14 Cal.4th at page 1110, our Supreme Court rejected the contention that a similar gang injunction "infringed defendants' right to associate with fellow gang members, a right protected by the First Amendment." The court concluded that the First Amendment does not "protect the collective public activities of the gang members within the [area subject to the injunction], activities directed in the main at trafficking in illegal drugs and securing control of the community through systematic acts of intimidation and violence." (*Acuna*, at p. 1110.) The court noted: "Freedom of association, in the sense protected by the First Amendment, 'does not extend to joining with others for the purpose of depriving third parties of their lawful rights.' [Citation.]" (*Id.*, at p. 1112.) "To hold that the liberty of . . . peaceful, industrious residents . . . must be forfeited to preserve the illusion of freedom for those whose ill conduct is deleterious to the community as a whole is to ignore half the political promise of the Constitution and the whole of its sense." (*Id.*, at p. 1125.)

### *The Associational Rights of Enjoined Persons Are Not Impermissibly Burdened*

■ "An injunction may not burden the constitutional right to association more than is necessary to serve the significant governmental issue at stake." (*People v. Englebrecht* (2001) 88 Cal.App.4th 1236, 1262 [106 Cal.Rptr.2d 738].) Appellants contend that the provision prohibiting enjoined persons from knowingly associating with Colonia Chiques members is invalid because it does not except family members from its purview: "By failing to provide for a 'family' exception to the 'no associating' provision, the court abused its discretion and ordered more than is necessary to abate the [nuisance]." Appellants maintain that, without such an exception, the "no associating" provision violates the constitutional right "to maintain close personal affiliations and to live with one's family and relatives."

The "no associating" provision (par. b.) provides: "No Associating With Other Known Colonia Chiques Members: Standing, sitting, walking, driving, gathering or appearing, anywhere in public view or anyplace accessible to the public, with any known member of COLONIA CHIQUES EXCEPT:

(1) when all members are inside a school attending a class or on school business; (2) when all members are inside a church; and/or (3) actively engaged in some business, trade, profession or occupation which requires such presence, provided the prohibition against associating shall apply to all forms of travel (except in school buses) to or from any of the locations described in (1)–(3) above."

In *People v. Englebrecht, supra*, 88 Cal.App.4th at pages 1261–1262, the defendant contended that a similar "no associating" provision in a gang injunction was invalid because it "unnecessarily infringe[d] on protected family relationships." The *Englebrecht* court rejected this contention. It reasoned that, as in the instant case, "[t]he injunction places no restrictions on contact between any individuals outside the target area. In the target area the injunction merely requires gang members not to associate in public." (*Id.*, at p. 1263.) The court further reasoned: "While the injunction may place some burden on family contact in the target area, it by no means has, in our view, a fundamental impact on general family association. [¶] Any attempt to limit the familial associational impact of the injunction would make it a less effective device for dealing with the collective nature of gang activity. Englebrecht makes much of the point that gang and familial ties often overlap and gang membership is often multigenerational. While such observation shows the possible unintended effect of gang association restrictions on families, it also indicates that any change in the injunction to allow greater association of family-related gang members would tend to limit the effectiveness of the association provisions. Such a limitation on the injunction would in general also make it more difficult to enforce. [¶] We conclude the injunction as issued has a limited impact on familial relationships. We also conclude any liberalization of the injunction to try to allow greater familial contact in the target area would limit the effectiveness of the injunction. The injunction as issued does not impermissibly burden Englebrecht's associational rights." (*Id.*, at p. 1263.)

### The Curfew Provision Is Unconstitutionally Vague

An expert on gangs testified that the "bulk" of criminal activity engaged in by Colonia Chiques members "occurs during the hours of darkness." For example, gang robberies typically occur during the night within the Safety Zone. According to the expert, Colonia Chiques members "are known in law enforcement as 'creatures of the night,' individuals who engage in nocturnal-type of behavior."

To deter nighttime criminal activity, the injunction includes a curfew provision (par. 1.). The provision enjoins gang members from "[b]eing outside [in the Safety Zone] between the hours of 10:00 p.m. on any day and sunrise the following day, unless (1) going to or from a legitimate meeting or entertainment activity (specifically excluding activities where other gang members are present); (2) actively engaged in some business, trade, profession or occupation which requires such presence (including directly driving to or from work); or (3) involved in a legitimate emergency situation that requires immediate attention."

Appellants contend that the curfew provision is unconstitutional because it is vague, overbroad, and impermissibly burdens the right to travel. We conclude that the provision is unconstitutionally vague; therefore, we need not consider the overbreadth and right to travel issues.

■ "A directive 'in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' [Citation.]" (*In re Berry, supra*, 68 Cal.2d at p. 156.) "[T]he underlying concern is the core due process requirement of adequate *notice*." (*Acuna, supra*, at p. 1115.) "[A] law that is 'void for vagueness' not only fails to provide adequate notice to those who must observe its strictures, but also 'impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' [Citation.]" (*Id.*, at p. 1116.)

"Two principles guide the evaluation of whether a law . . . is unconstitutionally vague. First, 'abstract legal commands must be applied in a specific *context*. A contextual application of otherwise unqualified legal language may supply the clue to a law's meaning, giving facially standardless language a constitutionally sufficient concreteness.' [Citation.] Second, only reasonable specificity is required. [Citation.] Thus, a statute 'will not be held void for vagueness "if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources." ' [Citation.]" (*People v. Lopez* (1998) 66 Cal.App.4th 615, 630 [78 Cal.Rptr.2d 66].) "[A] claim that a law is unconstitutionally vague can succeed *only* where the litigant demonstrates, not that it affects a substantial number of others, but that the law is vague as to her or 'impermissibly vague in *all of its applications*.' [Citations.]" (*Acuna, supra*, 14 Cal.4th at p. 1116.)

The curfew provision prohibits enjoined persons from "[b]eing outside" in the Safety Zone during curfew hours, but it does not define "outside." The phrase "being outside" uses "outside" as an adverb. Webster's Third New International Dictionary (1981) page 1604, defines "outside," when used as an adverb, as meaning "in the open air." We assume that the same meaning applies to "outside" as used in the curfew provision. Does this mean that a gang member is in violation of the injunction, and subject to arrest, if he or she is sitting in the open air on the front porch of his or her residence, or if he or she is standing on his or her own front lawn, or if he or she is at a late night barbecue in the backyard? Is a gang member "outside" if he or she is sitting inside a vehicle parked on the street? Is a gang member in violation of the injunction if he or she is present at a "legitimate meeting or entertainment activity" that occurs "outside" in the open air? The curfew provision makes an exception for gang members who are "outside" for the purpose of "going to or from a legitimate meeting or entertainment activity." But it does not state whether this exception encompasses gang members who are present at a legitimate meeting or entertainment activity that occurs "outside" rather than indoors.

The vagueness of "being outside" in the injunction contrasts with the specificity of Oxnard's juvenile curfew ordinance. The ordinance provides: "No minor shall be in or remain in or upon public property, a public place, on the premises of any establishment or vacant lot within the city during curfew hours." (Oxnard Ord. No. 2452, § 7-71.)[9] "Public Place" is defined as "[a]ny place to which the public or a substantial group of the public has access and includes but is not limited to, streets, highways, and the common areas of schools, hospitals, office buildings, transport facilities, and shops." (*Id.*, § 7-70, subd. (H).) "Establishment" is defined as "[a]ny privately-owned place of business operated for a profit to which the public is invited, including but not limited to, any place of amusement or entertainment." (*Id.*, § 7-70, subd. (C).)

The injunction also does not define the "legitimate meeting or entertainment activity" exception to the curfew provision. "Legitimate" is not unconstitutionally vague. Black's Law Dictionary (8th ed. 1999) page 920, defines "legitimate" as "[c]omplying with the law; lawful." Thus, a meeting or entertainment activity is legitimate if it is lawful.

---

[9] Pursuant to Evidence Code sections 452, subdivision (b), and 459, we take judicial notice of the Oxnard, California codified ordinances, which may be accessed at the following Web site: <http://www.amlegal.com/library/ca/oxnard.shtml> (as of Oct. 15, 2007).

However, the term "meeting or entertainment activity" is inherently vague. Webster's Third New International Dictionary, *supra*, page 1404, defines "meeting" as "an act or process of coming together: as . . . a gathering for business, social, or other purposes . . . ." It defines "entertainment" as "something that diverts, amuses, or occupies the attention agreeably . . . : as . . . a social gathering or reception . . . [or] a public performance designed to divert or amuse . . . ." (*Id.*, at p. 757.)

If a gang member is traveling "outside" for the purpose of visiting nongang family members or friends who live in the Safety Zone, is he or she going to a "meeting" within the meaning of the exception to the curfew provision? The broad dictionary definition of "meeting" could encompass such an informal social gathering. Or does "meeting" apply only to a formally organized gathering, such as a meeting at a church, school, or community center?

According to the broad dictionary definition of "entertainment," the term could encompass practically any lawful activity that provides diversion or amusement, such as a walk in the park. But the trial court surely did not intend "entertainment" to be so broadly construed, since otherwise the curfew provision would be practically meaningless. Does "entertainment activity" apply only to activities occurring at places of entertainment open to the public, such as restaurants, theaters, and nightclubs? If a gang member is going to a party at someone's home in the Safety Zone, is he or she going to an "entertainment activity" within the meaning of the exception to the curfew provision? Is he or she going to an "entertainment activity" if visiting a friend's house in the Safety Zone to watch a DVD movie on a big-screen television?

In sum, the curfew provision is " 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . . .' " (*In re Berry, supra*, 68 Cal.2d at p. 156.) Furthermore, it " 'impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' [Citation.]" (*Acuna, supra*, 14 Cal.4th at p. 1116.) Accordingly, the curfew provision violates due process of law and is unenforceable.

### The Injunction's Description of Enjoined Nonparties Is Not Unconstitutionally Vague

Appellants contend that the injunction is "unconstitutionally vague . . . in failing to describe with sufficient particularity which non-parties are enjoined." The injunction applies to Colonia Chiques "and its active members,

as well as all persons who participate with or act in concert with the Colonia Chiques in more than a nominal, passive, inactive or purely technical way, as defined by applicable law." Appellants complain that the injunction "contains no definition of 'members,' much less 'active members.' " Amicus curiae Isidro Campos argues that the term "active members" is unconstitutionally vague.

In *People v. Englebrecht, supra*, 88 Cal.App.4th at p. 1261, the court defined what constitutes active gang membership for purposes of a gang injunction: "[A]n active gang member is a person who participates in or acts in concert with [a criminal street gang]. *The participation or acting in concert must be more than nominal, passive, inactive or purely technical.*" (Italics added.) The italicized language has been incorporated almost verbatim into the gang injunction in the instant case.

The *Englebrecht* court's definition of "active gang member" was based on *People v. Castenada* (2000) 23 Cal.4th 743 [97 Cal.Rptr.2d 906, 3 P.3d 278]. In *Castenada* our Supreme Court considered the meaning of "actively participates in any criminal street gang" as used in Penal Code section 186.22, subdivision (a).[10] The Supreme Court defined the term "as meaning involvement with a criminal street gang that is more than nominal or passive." (*Castenada*, at p. 747.) In view of this definition, the court concluded that section 186.22, subdivision (a), is not unconstitutionally vague because "our Legislature has made it reasonably clear what conduct is prohibited" and because there is nothing in the section "that would encourage arbitrary or discriminatory law enforcement. [Citations.]" (*Castenada*, at p. 752.) The court noted: "As the United States Supreme Court observed in *Scales* [*v. United States* (1961)] 367 U.S. 203, 223 [6 L.Ed.2d 782, 81 S.Ct. 1469, 1483], '[t]he distinction between "active" and "nominal" membership is well understood in common parlance.' " (*Id.*, at p. 752.)

The gang injunction here follows the language of *Englebrecht* and *Castenada* in describing the persons to be enjoined. Accordingly, this description is not unconstitutionally vague.

---

[10] Penal Code section 186.22, subdivision (a), provides: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."

### *The Provision Relating to Open Containers of Alcoholic Beverages Is Not Overbroad*

Paragraph h of the injunction prohibits enjoined persons from engaging in the following activities: "Anywhere in public view or [in] anyplace accessible to the public": "(1) [P]ossessing an open container of an alcoholic beverage; or (2) knowingly remaining in the presence of anyone possessing an open container of an alcoholic beverage; or (3) knowingly remaining in the presence of an open container of an alcoholic beverage." Appellants acknowledge that "there is evidence that some gang members drink alcohol and that some criminal and nuisance behavior occurs during and after drinking alcohol . . . ." Nevertheless, appellants contend that paragraph h is overbroad in violation of the constitutional right to privacy. Appellants declare: "Clearly, the right of privacy has some application to the choice to eat or drink things of one's own choosing."

■ "The overbreadth doctrine provides that 'a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.' [Citation.]" (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 577 [20 Cal.Rptr.2d 341, 853 P.2d 507].) Appellant has failed to cite any authority to the effect that possessing an open container of an alcoholic beverage in public view or in a place accessible to the public is a freedom protected by the constitutional right to privacy. Appellants, therefore, have failed to carry their burden of demonstrating that paragraph h is overbroad.[11]

### *The Opt-out Provision Is Valid*

The injunction contains an "opt-out provision" whereby any enjoined person may move to be dismissed from the action. The injunction will not be enforceable against a person who has been so dismissed. Appellants contend: "The opt-out provision is a 'bill of goods' and must be rejected by this [court]." Appellants appear to be arguing that, because the injunction is invalid, it is unenforceable irrespective of whether a person invokes the opt-out provision. But, as discussed above, the injunction is valid except for the curfew provision. The opt-out provision, therefore, is also valid.

---

[11] "Because we conclude that the [open container provision] is not overbroad, we need not decide whether the overbreadth doctrine is applicable outside the area of freedoms protected by the First Amendment. The [United States] Supreme Court has stated that overbreadth challenges will be entertained only if a First Amendment violation is alleged." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1095, fn. 15 [40 Cal.Rptr.2d 402, 892 P.2d 1145].)

## *Disposition*

The judgment granting a permanent injunction is reversed to the extent that it requires the enjoined persons to comply with the curfew provision, paragraph 1, of the injunction. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.

Gilbert, P. J., and Perren, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 23, 2008, S158537. Werdegar, J., and Chin, J., were of the opinion that the petition should be granted.