[No. C056911. Third Dist. Aug. 11, 2009.]

JONNI HINTON, Plaintiff and Respondent, v.
ELDON BECK, Defendant;
GRANGE INSURANCE GROUP et al., Interveners and Appellants.

## Counsel

Ericksen, Arbuthnot, Kilduff, Day & Lindstrom, Lois A. Lindstrom and Gregory A. Mase for Interveners and Appellants.

Barr & Mudford, John D. Barr and J. Michael Favor for Plaintiff and Respondent.

## Opinion

**BLEASE, Acting P. J.**—This is an appeal of an order striking Grange Insurance Group's (Grange) complaint in intervention in the personal injury action by Jonni Hinton against Grange's policyholder, Eldon Beck, in which Hinton had obtained Beck's default and an assignment of his rights against Grange.

The issue is whether an insurer may deny coverage and a defense to its policyholder when the policyholder is sued by an injured plaintiff, and later intervene in the action between the plaintiff and the policyholder. The insurer sought permissive intervention pursuant to Code of Civil Procedure section 387, subdivision (a), which originally was granted.[1] The trial court thereafter granted plaintiff's motion to strike the insurer's complaint in intervention.

We shall conclude that the trial court did not abuse its discretion in granting the motion to strike, because Grange, having denied coverage and having refused to defend the action on behalf of its insured, did not have a direct and immediate interest to warrant intervention in the litigation.

[1] References to an undesignated section are to the Code of Civil Procedure.

## FACTUAL AND PROCEDURAL BACKGROUND

This is the third appeal involving Hinton and Grange following a series of procedural missteps. The facts mainly are drawn from our prior opinions.

Plaintiff, Jonni Hinton, commenced this personal injury action over 14 years ago, in November 1994. Hinton's original complaint alleged Beck was the lessee of real property and Hinton was helping him gather and sort cows and calves on the property. Hinton was trying to keep a gate closed when a cow ran into the gate, taking the gate off of its hinges, and causing it to strike Hinton and seriously injure her.

When defendant Eldon Beck's insurance carrier, Grange, denied coverage for Hinton's loss and refused to defend, Hinton entered into an agreement with Beck not to execute any judgment against Beck in exchange for an assignment of Beck's rights against the insurance company. The trial court entered a default judgment against Beck in July 1998 for approximately $2 million, even though Beck was never served with a statement of damages.

Hinton then filed a separate action against Grange in Shasta County, alleging breach of contract, breach of the duty of good faith and fair dealing, and negligent procurement of insurance. The case was transferred to Sacramento Superior Court. The court granted Grange's motion for summary judgment on the ground the Shasta court lacked jurisdiction to enter a default judgment in the absence of a personally served statement of damages.

Hinton proceeded to obtain a new default judgment from the Shasta court, nunc pro tunc as of the date of the earlier default, July 22, 1998. Armed with the new judgment, Hinton filed a new trial motion, a motion for reconsideration, and a motion to vacate in the Sacramento action. The court denied the motions. The case was appealed, and this court affirmed.

On February 12, 2003, Hinton personally served a statement of damages in the amount of $6,042,000 on Beck. The next day, she entered another default, and on February 26, 2003, entered another default judgment.

On October 25, 2004, the trial court granted Grange's motion for leave to file a complaint in intervention and set the matter, on its own motion, for a hearing to determine whether the default entered February 13, 2003, and the resulting judgment were void for failure to serve the operative complaint (the second amended complaint) on Beck, and to determine whether the action should be dismissed pursuant to section 583.210 or 583.360, for failure to serve the summons and complaint within three years and failure to bring the action to trial within five years. The court found the operative complaint had

not properly been served on Beck, and ordered the February 13, 2003, default and the February 26, 2003, default judgment set aside. The trial court further found Hinton had failed to comply with sections 583.250 and 583.360, and dismissed the action.[2]

Hinton appealed, and we affirmed the order setting aside the default judgment of September 28, 2006, but reversed the order dismissing the action for failure to bring it to trial within five years on the ground the five-year period within which to bring the matter to trial was suspended during the period a default judgment remained in effect. This set the case at large in the trial court.

Thereafter, on February 20, 2007, Hinton filed another request for entry of default, and one day later, Grange filed a first amended complaint in intervention. Hinton moved to strike the complaint in intervention. The trial court denied the motion to strike, finding *Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383 [100 Cal.Rptr.2d 807] (*Reliance*), to be dispositive.

Subsequently, Hinton filed a status conference statement, in which she argued the trial court's decision to deny her motion to strike had been erroneous. Citing *Noya v. A.W. Coulter Trucking* (2006) 143 Cal.App.4th 838 [49 Cal.Rptr.3d 584] (*Noya*), she urged the trial court to reconsider its ruling.

The trial court reconsidered its ruling, and granted Hinton's motion to strike the complaint in intervention. Grange appeals from this order.

## DISCUSSION

Intervention pursuant to section 387, subdivision (a) is not a matter of right, but is discretionary with the trial court.[3] (*Squire v. City and County of San Francisco* (1970) 12 Cal.App.3d 974, 978 [91 Cal.Rptr. 347].) An order striking a complaint in intervention is an appealable order. (*Timberidge Enterprises, Inc. v. City of Santa Rosa* (1978) 86 Cal.App.3d 873, 878 [150 Cal.Rptr. 606].) We review the trial court's decision to deny leave to intervene under a deferential abuse of discretion standard. (*Noya, supra,* 143 Cal.App.4th at p. 842.)

█ The trial court has the discretion to allow intervention where the proper procedures are followed, provided (1) the intervener has a direct and

---

[2] This ends the recitation of facts from our earlier opinion.

[3] Section 387, subdivision (a) provides in pertinent part: "Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding."

immediate interest in the litigation, (2) the intervention will not enlarge the issues in the case, and (3) the reasons for intervention outweigh opposition by the existing parties. (*Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 346 [70 Cal.Rptr.2d 255].) We shall conclude the trial court properly exercised its discretion in this case because Grange did not have a direct and immediate interest in the litigation.

In *Continental Vinyl Products Corp. v. Mead Corp.* (1972) 27 Cal.App.3d 543 [103 Cal.Rptr. 806], the court explained what constituted a direct interest in the litigation giving rise to a right to intervene. "Not every interest in the outcome of litigation gives to its possessor the right to intervene in the lawsuit. 'The interest . . . must be direct and not consequential, and it must be an interest which is proper to be determined in the action in which the intervention is sought.' [Citation.] [¶] A person has a direct interest justifying intervention in litigation where the judgment in the action of itself adds to or detracts from his legal rights without reference to rights and duties not involved in the litigation." (*Id.* at p. 549.)

The court described a consequential interest, one that is insufficient for intervention, as occurring "when the action in which intervention is sought does not directly affect it although the results of the action may indirectly benefit or harm its owner." (*Continental Vinyl Products Corp. v. Mead Corp., supra,* 27 Cal.App.3d at p. 550.) The court further stated, "An insurer which refused to defend except upon a reservation of rights has only a consequential interest not justifying intervention in an action against its insured." (*Id.* at p. 551.)

In *Corridan v. Rose* (1955) 137 Cal.App.2d 524 [290 P.2d 939], the court considered whether it was error to permit the insurer to intervene in the trial between the injured plaintiff and the insured defendant, when the insurer denied coverage to the defendant and refused to defend him without a reservation of rights agreement. (*Id.* at pp. 526, 528.) Finding no authority directly on point in California, the court looked to other jurisdictions. (*Id.* at p. 528.) It cited several out-of-state cases, including one New York case that upheld an order denying an insurer leave to intervene on the ground that by disclaiming liability and refusing to defend, the insurer had waived all rights to intervene. (*Id.* at p. 529.) The court stated that "[i]n these few outside cases there seems to be a preponderance of the view that an insurer who disclaims liability on his policy has no interest justifying intervention in the action against his insured." (*Ibid.*)

Although the court found other factors that militated against intervention, namely the insurer's opposition of coverage in the same action and the injection of insurance issues into a damage action, these factors were

secondary to the court's primary determination that the insurer's interest was remote and contingent. (*Corridan v. Rose, supra*, 137 Cal.App.2d at pp. 530–531.)

Likewise in *Kuperstein v. Superior Court* (1988) 204 Cal.App.3d 598, 599 [251 Cal.Rptr. 385], the insurer intervened in the action between the plaintiff and the insured defendant and sought a declaration that it had no duty to defend or indemnify. The court held that the insurer did not have a direct interest such that it would "gain or lose by the direct legal operation of the judgment. . . . If judgment is for the plaintiff, how Kuperstein pays this and whether he has insurance to cover it are collateral. There is no direct interest on the part of the insurer." (*Id.* at p. 600.)

■ Thus, an insurer who denies coverage and refuses to defend its insured does not have a direct interest in the litigation between the plaintiff and the insured to warrant intervention. The rationale behind this rule is that by its denial, the insurer has lost its right to control the litigation. (*Eigner v. Worthington* (1997) 57 Cal.App.4th 188, 196 [66 Cal.Rptr.2d 808] ["When an insurer wrongfully refuses to defend, the insured is relieved of his or her obligation to allow the insurer to manage the litigation and may proceed in whatever manner is deemed appropriate."]; *Stalberg v. Western Title Ins. Co.* (1991) 230 Cal.App.3d 1223, 1233 [282 Cal.Rptr. 43].)

In *Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718 [117 Cal.Rptr.2d 318, 41 P.3d 128] (*Hamilton*), the insurer agreed to defend its insured, but refused a settlement demand within the policy limits, after which the claimant and the insured entered into a stipulated judgment in excess of the policy limits, and the insured assigned its rights against the insurer to the claimant. (*Id.* at pp. 721–722.) The Supreme Court concluded that the amount of the stipulated judgment was not presumptively binding on the insurer in the subsequent action by the claimant as the insured's assignee. (*Id.* at p. 722.)

The facts in *Hamilton* are distinguishable from those before us, and the Supreme Court recognized this distinction:

■ "As we have explained in previous cases, the denial of coverage and a defense entitles the policyholder to make a reasonable, noncollusive settlement without the insurer's consent and to seek reimbursement for the settlement amount in an action for breach of the covenant of good faith and fair dealing. ' "[W]here the insurer has repudiated its obligation to defend[,] a defendant in the absence of fraud may, without forfeiture of his right to indemnity, settle with the plaintiff upon the best terms possible, taking a covenant not to execute." ' [Citation.]

" 'In effect, when the insured tenders the suit, the carrier is receiving its chance to be heard. Having rejected the opportunity and waived the chance to contest liability, it cannot reach back for due process to void a deal the insured has entered to eliminate personal liability.' [Citation.] Thus, the policyholder denied a defense for covered claims by its liability insurer may make a reasonable settlement with the plaintiff, in good faith, and then maintain (or assign) an action against the insurer for breach of its defense duties. In such an action, 'a reasonable settlement made by the insured to terminate the underlying claim against him may be used as presumptive evidence of the insured's liability on the underlying claim, and the amount of such liability.' [Citation.]" (*Hamilton, supra*, at pp. 728–729.)

*Hamilton* speaks directly to the case before us because Grange rejected the opportunity and waived the chance to contest the liability of its insured when it denied Beck a defense. Hinton settled with Beck by agreeing to forgo execution of her default judgment against him in exchange for an assignment of his rights against Grange. Grange may not now inject itself into the litigation because it lost its right to control the litigation when it refused to defend or indemnify Beck.

We agree with the holding in *Noya*, cited by Hinton and relied upon by the trial court. In that case the trial court denied the insurer's motion to intervene after the insurer first refused a tender of defense, then later sought to intervene when it learned the defendant had agreed to a sizable settlement with the plaintiffs, which included a covenant not to execute and which granted the plaintiffs the right to monies the defendant might recover on a breach of contract and bad faith action against the insurer. (*Noya, supra*, 143 Cal.App.4th at p. 840.)

We disagree with the court's dicta that the insurer had a direct and immediate interest in the lawsuit because it might ultimately be required to pay the judgment against the defendant. (*Noya, supra*, 143 Cal.App.4th at p. 842.) The court cited only Insurance Code section 11580, providing for a direct action against the insurer, and *Reliance*, in support of its statement. It did not consider the authority cited above, which holds that an insurer has no direct interest in the lawsuit when it has waived such interest by refusing to defend its insured.

Nevertheless, the court correctly affirmed the order denying intervention, stating that the insurer "is in no position to complain about this circumstance when it has consistently denied coverage and refused to provide [defendant] with any defense. When an insurer denies coverage and a defense, the insured is entitled to make a reasonable, noncollusive settlement without the insurer's

consent and may seek reimbursement for the settlement amount and for any breaches of the covenant of good faith and fair dealing." (*Noya, supra,* 143 Cal.App.4th at p. 842.)

Grange argues it has the requisite direct and immediate interest in the litigation because Hinton, as a judgment creditor, may proceed directly against Grange pursuant to Insurance Code section 11580. That section provides that "whenever judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." (Ins. Code, § 11580, subd. (b)(2).) Grange cites several cases, all of which are distinguishable from the case before us in that they did not involve insurers who had denied coverage and refused to provide a defense to their insured.

In *Reliance,* the court held that where an insurer may be subject to a direct action under Insurance Code section 11580, intervention is appropriate. (*Reliance, supra,* 84 Cal.App.4th at pp. 386–387.) However, that case did not involve an insurer that had denied coverage and refused to provide a defense. Moreover, the defendant in that case was a corporation whose corporate status had been suspended, thus it could not defend the action against it. (*Id.* at pp. 385–386.)

In *Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459 [258 Cal.Rptr. 907], the plaintiff sought damages for an alleged sexual assault. The Court of Appeal held that the trial court acted within its discretion in allowing the insurer to intervene. (*Id.* at p. 1468.) However, the defendant insured did not notify the insurer of the lawsuit or request a defense until after entry of default. (*Id.* at p. 1470.) Furthermore, the insurer agreed to provide a defense with a reservation of rights. (*Id.* at pp. 1470, 1472.)

In *Nasongkhla v. Gonzalez* (1994) 29 Cal.App.4th Supp. 1 [34 Cal.Rptr.2d 379], the insurer retained counsel for the defendant and provided him with a defense, even though it was unable to locate him. (*Id.* at p. Supp. 3.) The court reasoned that unless the insurer were allowed to intervene, it would have no other opportunity to litigate fault or damages in an action brought by the plaintiff pursuant to Insurance Code section 11580. (29 Cal.App.4th at p. Supp. 4.) The case before us is distinguishable because it is precisely this opportunity to litigate fault or damages that the insurer waives when it denies coverage and refuses to defend.

Grange also argues that its intervention would not enlarge the issues in the case and that its need for intervention outweighs any opposition by the parties

in the action.[4] We find Grange's lack of a direct interest in the litigation dispositive. Therefore we do not reach the remaining factors relevant to the trial court's determination.

We conclude the trial court acted well within its broad discretion when it struck the complaint in intervention.

## DISPOSITION

The judgment (order) is affirmed. Costs are awarded to plaintiff.

Nicholson, J., and Raye, J., concurred.

---

[4] Grange has filed a separate declaratory relief action seeking a declaration that Hinton's accident was not covered under its policy.