[No. B212082. Second Dist., Div. Three. Mar. 22, 2010.]

STEVEN W. GRAY, Plaintiff and Respondent, v.
DAMEON L. BEGLEY, Defendant and Respondent;
CONTINENTAL CASUALTY COMPANY et al., Interveners and
Appellants.

COUNSEL

Law Offices of Daniel W. Rinaldelli and Daniel W. Rinaldelli for Plaintiff and Respondent.

Rodney G. Ritner for Defendant and Respondent.

Woolls & Peer, John E. Peer and H. Douglas Galt for Interveners and Appellants.

OPINION

**CROSKEY, J.**—While this case presents a somewhat tortured procedural history, it also presents a significant question in the field of insurance litigation. When an insurer provides an insured a defense under a reservation of rights, and the insured subsequently reaches a private settlement with the third party claimant without the participation of the insurer, may the insurer intervene in the underlying action brought by the claimant to protect its own interests—including the right to seek a setoff of the judgment against the insured based on a prior settlement by the claimant with another party? We conclude that it may.

Plaintiff Steven W. Gray was injured in an automobile accident. The other driver was Dameon L. Begley, who was employed by Granite Construction Company (Granite). Gray brought suit against Granite and Begley for compensation for the injuries he had suffered in the accident. Granite was insured by Continental Casualty Company and Valley Forge Insurance Company (collectively CNA). Granite's excess insurer was Westchester Insurance Company (Westchester). CNA and Westchester reached an agreement with Gray on behalf of Granite, but not on behalf of Begley, whereby CNA and Westchester paid Gray an amount in excess of $8 million, in exchange for a release of Granite. Gray proceeded to trial against Begley and CNA defended Begley under a reservation of rights. Gray obtained a jury verdict, and judgment, against Begley for $4.5 million. Begley moved to vacate the judgment, in order to offset the amount of the settlement under Code of Civil Procedure section 877.[1]

---

[1] Code of Civil Procedure section 877 provides in pertinent part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect: [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration

Thereafter, Gray and Begley reached a private agreement which required Begley to assign to Gray his rights against CNA and withdraw his motion to vacate the judgment. After Begley withdrew his motion to vacate, CNA moved to intervene, in order to proceed on its own motion to vacate the judgment and apply the setoff. The trial court granted the motion to intervene. However, due to Begley's withdrawal of his motion to vacate the judgment, the time within which a notice of appeal must be filed expired prior to the trial court hearing CNA's motion for setoff. On the last day, the trial court denied CNA's motion for setoff due to there not being sufficient time for it to be heard, and CNA filed a notice of appeal. On appeal, Gray argues that CNA should not have been entitled to intervene. We disagree. We also conclude that CNA is entitled to a hearing on its motion to vacate and for setoff. We therefore reverse and remand for further proceedings.

## *FACTUAL AND PROCEDURAL BACKGROUND*

We discuss, in some detail, the lengthy procedural history which ultimately deprived CNA of its right to be heard on its motion to vacate. While we do not address the merits of CNA's motion for setoff, or the merits of Begley's subsequently filed bad faith action against CNA, the history of this matter raises questions regarding the possibility of collusion between Gray and Begley.

Gray was seriously injured in an automobile accident; he was a passenger in an SUV hit by Begley. Begley was allegedly driving a car entrusted to him by Granite, and acting within the course and scope of his employment. According to Gray, Begley was driving under the influence of alcohol, and recklessly crossed the lane line, striking the SUV and causing it to roll over. Gray brought suit against Begley and Granite, alleging negligence on the part of both defendants. Gray also pleaded a cause of action for negligent entrustment against Granite, on the basis that Granite knew of Begley's prior reckless driving and should not have entrusted him with one of its vehicles. Gray sought compensatory and punitive damages against both defendants.

Initially, CNA denied coverage for Begley on the basis that Begley had been acting outside the course and scope of his employment when he drove drunk. Nonetheless, it offered to provide him with a courtesy defense. CNA apparently accepted the defense of Granite. There are unresolved factual disputes, not relevant to the issues raised by this appeal, regarding whether (1) CNA timely notified Westchester of the possibility that Westchester's

---

paid for it whichever is the greater. [¶] . . . [¶] (c) This section shall not apply to co-obligors who have expressly agreed in writing to an apportionment of liability for losses or claims among themselves."

excess policy might be implicated; (2) CNA improperly declined a settlement offer within its policy limits; and (3) defense counsel appointed by CNA properly prepared for trial.

The case proceeded toward trial against Begley and Granite. Westchester became involved and entered into settlement negotiations with CNA and Gray. On April 25, 2008, Gray signed a release agreement. The release was signed only by Gray and his counsel; there are no signatures on behalf of CNA, Westchester, or Granite. Under the terms of the release, CNA was to pay Gray the remains of its policy limit,[2] in the amount of $3,186,380.62. Westchester was to pay an additional $5 million. In exchange for these payments,[3] Gray would dismiss and release Granite. The release clearly stated that it did not release Begley, nor would it release CNA. However, the release stated that Gray "has agreed to enter into a covenant not to execute with Begley upon entry of judgment."

Ultimately, Gray would argue that the language of the release which exempted Begley and CNA from its terms was intended to allow Gray to proceed to trial against Begley and attempt to collect any judgment against CNA *with no offset for the amounts paid on behalf of Granite*. In contrast, CNA would argue that although Begley and CNA were not expressly released by this agreement, the agreement did not preclude the offset provided for in Code of Civil Procedure section 877 from applying to any subsequent judgment obtained against Begley.

The other term of note from the release agreement is that Gray "has agreed to enter into a covenant not to execute with Begley upon entry of judgment." It would come to pass that Gray would not, in fact, enter into a covenant not to execute against Begley without receiving additional consideration.[4]

Although Gray would eventually challenge CNA's evidence that CNA and Westchester paid the amounts indicated in the release, Gray dismissed, *with*

---

[2] The driver of the SUV in which Gray had been a passenger had also brought suit against Granite and Begley. The record does not indicate the disposition of that action, but it is possible that CNA's policy limits were partially depleted as a result of a settlement of that action.

[3] The Westchester payment was in consideration of the dismissal and release of Granite "and for a separate settlement agreement between Gray and Westchester," the terms of which were not otherwise disclosed.

[4] CNA apparently retained additional counsel for Begley, for the purpose of negotiating the covenant not to execute. It became apparent, as early as June 2008, that Gray would not provide the covenant not to execute unless Begley gave additional consideration, including an assignment of his rights against CNA and an agreement to join Gray in a subsequent action against CNA. Despite Gray's apparent refusal to abide by the terms of his original agreement, at no point was any action taken to rescind the agreement for failure of consideration or to proceed against Gray for anticipatory breach. Instead, the case proceeded to trial against Begley, with the understanding that negotiations would resume after the trial had concluded.

*prejudice*, his complaint against Granite. A few weeks later, CNA withdrew its denial of coverage of Begley and instead agreed to defend him subject to a reservation of rights. The case proceeded to trial against Begley alone. Negligence was conceded; the issues at trial were causation and damages.

In that trial, the jury concluded that Begley's negligence was a substantial factor in causing harm to Gray. The jury was then asked, "What are [Gray's] total damages?" The jury concluded Gray suffered $3.5 million in economic losses and $1 million in noneconomic losses, for a total verdict of $4.5 million. After the verdict was read, the trial court asked counsel, "Will there come a time or have you already determined how the court is to apportion the amount of the judgment where there has been a settlement as to a defendant, at least that's my understanding, and how is the judgment against defendants reduced and in what measure?" Begley's counsel, who was provided by CNA, argued that the entire settlement should be offset. Gray's counsel stated that the settlement with Granite "was only for the punitive exposures to Granite."[5] Gray's counsel was adamant that the settlement with Granite did not in any way encompass compensatory damages suffered by Gray, but settled only Gray's claim against Granite for punitive damages. The trial court therefore sought briefing on the issue of any setoff.

Gray submitted a proposed judgment in the amount of $4.5 million, plus costs and attorney fees. Begley submitted a proposed judgment in the amount of zero dollars, on the basis that the entire judgment should be offset by the Granite settlement. No hearing on the issue of setoff was held. Instead, on August 29, 2008, the trial court signed the judgment submitted by Gray. Notice of entry of judgment was served on September 3, 2008.

On September 8, 2008, Begley moved ex parte to vacate the judgment under Code of Civil Procedure sections 663 and 473, subdivision (b). Begley took the position that entry of judgment without further briefing and a hearing on the issue of offset constituted either a trial court error or attorney mistake. Indeed, Begley submitted a declaration of counsel to the effect that counsel had already reserved a hearing date for the motion for reduction of the award, and had been propounding discovery relating to the settlement in preparation for such a motion.

At the hearing on the ex parte motion, the trial court concluded that the issue of whether the judgment should be vacated should proceed via noticed motion. At this point, Begley's counsel asked for an order shortening time so that Gray would not execute on the judgment and impair Begley's credit. At

---

[5] At this point, the trial court responded, "No, no. I think not. That's the second settlement." This may be a reference to the undisclosed settlement between Westchester and Gray. (See fn. 3, *ante.*)

no point did either Begley or Gray argue that the release included a promise of a covenant not to execute against Begley. In any event, the court denied an order shortening time, and instructed Begley to properly serve his motion to vacate.[6]

That same day, Begley filed his noticed motion to vacate. Among other things, Begley's motion argued that Gray's contention that the Granite settlement was attributable solely to punitive damages was meritless—on the basis that there is no insurance coverage for punitive damages (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 317–318 [84 Cal.Rptr.2d 455, 975 P.2d 652]), so CNA and Westchester would not have paid from their policies for such damages. Begley also submitted a declaration of counsel for Granite to the effect that Granite would have refused a settlement which settled only *part* of Gray's claim against Granite.

On September 18, 2008, Gray moved for prejudgment and postjudgment interest and costs, including costs due to Begley's rejection of an offer under Code of Civil Procedure section 998. Gray also moved for over $2 million in attorney fees as sanctions for failing to admit matters in requests for admission which Gray subsequently proved at trial. (Code Civ. Proc., § 2033.420.) The statute allows a party to seek "reasonable expenses incurred in making that proof, including reasonable attorney's fees." (Code Civ. Proc., § 2033.420, subd. (a).) Gray calculated the amount of "reasonable attorney's fees" as 45 percent of the judgment, as Gray's counsel was retained on a 45 percent contingency fee basis.[7]

Gray also opposed Begley's motion to vacate in its entirety. At this point, Gray abandoned his argument that the settlement with Granite was attributable solely to punitive damages. Instead, Gray argued that the settlement included numerous claims, including legal malpractice, fraud, and bad faith.[8]

---

[6] No party suggests that the denial of Begley's unserved *ex parte* motion to vacate constitutes the denial of a served and valid motion to vacate which would affect the time for filing a notice of appeal under California Rules of Court, rule 8.108(c).

[7] Alternatively, Gray's counsel argued that it was entitled to "reasonable attorney's fees" in the amount of $1.2 million, based on hourly rates of $2,000 and $1,000 per hour. Gray's attorneys made no attempt to establish that they had ever charged such rates, nor that these were reasonable rates for attorneys of their experience. Instead, counsel represented that these were the rates they would charge if they had to assume the risk of not getting paid.

[8] While we are not concerned with the merits of the motion to vacate/offset in this appeal, this particular argument by Gray gives us pause. He contended that Granite's counsel (provided by CNA) committed legal malpractice and CNA committed bad faith. Gray took the position that the settlement encompassed causes of action for legal malpractice and bad faith which Granite would have assigned to Gray. We are somewhat skeptical of this assertion for a number of reasons, not the least of which is the utter silence of the release on this ground. The release says *nothing* regarding the release of any claims Granite may have against CNA. To the extent Gray releases claims it has against Granite and its insurers, the release expressly

Gray also argued that, at a minimum, there should be no setoff for noneconomic damages or for costs. In the course of his objections to CNA's evidence, Gray represented that "Begley is making a claim against [CNA] and . . . the execution of the judgment will be stayed upon Begley's assignment of rights against CNA and agreement to participate in a lawsuit against CNA for bad faith."

Before the motion to vacate could be heard, Begley and Gray reached a private agreement. Although the terms of the agreement are not revealed by the record, it appears that the agreement involved Begley's withdrawal of his motion to vacate and Gray's covenant not to execute.[9] The agreement also may have included a payment from Gray to Begley, and an agreement to jointly proceed against CNA for the full amount of the judgment.[10]

At this point, Begley's counsel, which had been provided by CNA, sought to be relieved as counsel. Begley's attorneys believed that pursuing the motion to vacate and obtaining a judgment of *zero* against Begley would be preferable to a judgment in excess of $4.5 million against Begley. However, Begley allegedly had a financial interest in keeping the $4.5 million judgment against him in existence, as he would share in the proceeds if Gray successfully collected from CNA.

On October 6, 2008, Begley's counsel filed an ex parte motion to shorten time for a motion to be relieved as counsel for Begley. At Begley's direction, Begley's counsel also took the motion to vacate off calendar. On the same day, CNA filed an ex parte application to intervene and join in Begley's motion to vacate the judgment, as the real party in interest.

At the hearing, the trial court expressed concern that there was no actual emergency requiring an ex parte motion to be relieved as counsel rather than a noticed motion. The court continued the hearing on both ex parte motions to October 16, 2008. Begley's counsel immediately filed a noticed motion to

---

*exempts* CNA. Moreover, the payment made by CNA to Gray is described as "the remaining limits of [its] liability policy." That CNA would pay *from its policy covering* Granite to settle claims *of* Granite for bad faith and legal malpractice *against it* is difficult to understand. While there was, apparently, an additional agreement between Westchester and Gray, we find it equally difficult to believe that an excess carrier would pay from its policy *covering* the insured in order to settle claims *of* the insured against a primary carrier.

[9] In a postargument letter brief to this court, Gray indicates that he and Begley "entered into a covenant not to execute, rendered after Judgment."

[10] Gray argues that the consideration for the withdrawal of Begley's motion included Gray taking his motions for interest, costs and attorney fees off calendar. Begley's motion to vacate was withdrawn on October 6, 2008. On October 8, 2008, Gray requested to continue his motions for interest, costs and attorney fees to November 20, 2008. The motions were not taken off calendar until November 17, 2008, after CNA had filed its notice of appeal.

be relieved and set it for hearing on that date. Both CNA and Gray filed additional briefing on CNA's motion to intervene.[11]

A stipulation was reached, substituting new counsel for Begley. Begley's new attorney had previously appeared as cocounsel for Gray at a deposition. CNA's ex parte motion to intervene was continued to October 21, 2008. Begley, now represented by new counsel, opposed CNA's motion to intervene.

As Begley's motion to vacate had been withdrawn, there was no longer a motion to vacate which CNA could seek to join. For the hearing on October 21, 2008, CNA submitted an ex parte motion for leave to file its own motion to reduce the jury verdict by the amount of the setoff. At the hearing, the trial court inquired as to why CNA was proceeding by an ex parte, rather than a noticed, motion. CNA responded that, if it were not *permitted* to file a motion to vacate the judgment, the trial court would lose jurisdiction on November 3, 2008. Notice of entry of judgment had been served on September 3, 2008. Sixty days from notice of entry would be November 2, 2008, which was a Sunday. CNA therefore believed that a notice of appeal from the judgment had to be filed by November 3, 2008, and that if its own motion to vacate were to extend the time, that motion had to be filed by that date. CNA represented that it could file a noticed motion to reduce the jury verdict on October 21, 2008, and a noticed motion to intervene on the next day. The trial court agreed, and set a shortened briefing schedule whereby both motions would be heard on October 29, 2008.

Briefing was filed as scheduled.[12] Among other issues raised, Begley opposed CNA's motion to reduce the verdict on the basis that he had not yet been given an opportunity to respond to CNA's complaint in intervention or to conduct discovery.

---

[11] Gray's opposition to CNA's motion to intervene was full of invective, including referring to Begley's counsel as "a felon who killed an 11 year old child because he himself was a multiple offender drunk driver." Gray also argued that, due to entry of the judgment, Begley had faced "the imminent certainty of personal liability for millions of dollars," despite Gray's prior promise, in the release, "to enter into a covenant not to execute with Begley upon entry of judgment" and the apparent entry into such a covenant. Gray then goes on to say that "[a]t best, CNA provided a courtesy defense to [Begley] after Granite was dismissed from the trial," although CNA, in fact, had withdrawn its denial of coverage and provided Begley with a defense under a reservation of rights.

[12] Begley opposed CNA's motion to intervene, on the basis that he wanted to preserve his agreement with Gray which would protect him "from all liability without resort to further litigation to determine the coverage issues raised because of CNA's continued denial of coverage." Begley argued that if CNA were permitted to intervene, he "would still have an unsatisfied judgment hanging over his head, and face the possibility of having his probation violated," apparently on the basis that if CNA were permitted to intervene, Begley's agreement with Gray whereby he purchased the covenant not to execute would somehow be invalid. At

The hearing was held on October 29, 2008. The trial court granted the motion to intervene. On appeal, Gray takes the position that the motion to intervene was only tentatively granted, as that language was used in the minute order.[13] The transcript of the October 29, 2008 hearing unambiguously indicates the motion to intervene was granted, with the trial court first stating, "if I granted the motion to allow you to intervene, that stays anything further, and I'm granting that request." Later in the hearing, the trial court stated, "I am now so ruling that you . . . may intervene." Thereafter, Gray's counsel asked the court to "momentarily set aside the ruling on the intervention," so counsel could make an objection. The court permitted counsel to make his argument. Gray argued that CNA did not have a sufficiently immediate interest in the case to justify intervention, as CNA could make its argument in a later coverage action. The trial court rejected the argument. At the close of the hearing, the trial court reaffirmed that CNA was then "sanctified as the [party] that [is] going to intervene." CNA's complaint in intervention was filed that day.

The court then proposed a briefing schedule on the motion for setoff whereby CNA would supply all necessary exhibits and declarations in support of its motion within 30 days. CNA was again concerned regarding jurisdiction. At this point, CNA noted California Rules of Court, rule 8.108(c)(2) extended the time to appeal the judgment until 90 days after *the first motion* to vacate the judgment had been filed. Believing that Begley filed his motion to vacate on September 3, 2008 (although it had actually been filed on Sept. 8, 2008), CNA represented that it would have to file its notice of appeal by December 3, 2008,[14] unless the trial court chose to vacate the judgment to enable CNA's motion to proceed. The trial court inquired if CNA had any authority indicating that if the trial court vacated the judgment but concluded CNA's contention was meritless, it could then reinstate the judgment. No party offered any authority.

The court then determined that the best procedure would be for the parties to brief whether there was a procedure which would enable the court to give CNA's motion the time it deserved. The court speculated that perhaps recalling the judgment would be proper, or that CNA could obtain a writ extending the trial court's jurisdiction. In any event, before setting a briefing schedule on the motion itself, the court asked the parties to brief, for a hearing on November 5, 2008, the jurisdictional issues.

no point prior to this time had it been suggested that Gray's private agreement with Begley required forbearance of any kind on the part of CNA.

[13] When the issue was raised at a subsequent hearing, the trial court stated its belief that the motion had been granted, but indicated that the reporter's transcript would govern.

[14] Ninety days from September 3, 2008, is actually Tuesday, December 2, 2008.

In preparing its briefing on the jurisdictional issue, CNA discovered authority indicating that the withdrawal of a motion to vacate constitutes a denial of the motion for purposes of California Rules of Court, rule 8.108(c). (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2009) ¶ 3:78, p. 3-34 (rev. # 1, 2008).) Thus, as Begley's motion to vacate was withdrawn on October 6, 2008, CNA had until 30 days from that date, or until November 5, 2008, to file its notice of appeal from the judgment. CNA argued that the trial court should therefore vacate the judgment immediately, with the understanding that the court could reinstate the judgment if it ultimately concluded that an offset was not warranted.

At the hearing on November 5, 2008, the trial court denied CNA's motion to vacate, on the basis that it did not have sufficient evidence before it to justify vacating the judgment. However, the court believed that CNA was entitled to a hearing on its offset motion. The court stated that CNA had a reasonable theory supporting its right to an offset, but agreed that Gray and Begley had a right to complete discovery and properly put on their defense to CNA's argument. The court therefore "reluctantly" denied the motion to vacate the judgment. The court added, "I really do believe that at least the representations of intervenor need and demand a hearing, and I hope you get it." CNA's notice of appeal from the judgment and the denial of the motion to vacate was filed immediately thereafter.

While this appeal was pending, Gray, Begley and Westchester brought suit against CNA and the attorneys CNA retained to represent Begley, alleging seven causes of action including bad faith and legal malpractice. The complaint alleges that Begley "has suffered economic damages including a judgment in excess of $4,5[00,000] against him."[15]

## CONTENTIONS ON APPEAL

Gray and Begley first argue that CNA lacks standing to appeal; this encompasses an argument that CNA should not have been permitted to intervene. We disagree on both counts. CNA argues that it is entitled to offset the settlement against the judgment, in its entirety, as a matter of law. Alternatively, CNA argues that the judgment should be reversed and the matter remanded for a hearing on its motion for setoff. Gray responds that CNA is not entitled to any offset, as a matter of law. We conclude that the issues regarding the merits of CNA's motion for setoff must be resolved by the trial court in the first instance. We will therefore reverse and remand for a hearing on CNA's motion for setoff.

---

[15] The merits of this complaint are clearly not before this court. We note, however, that (1) Gray has given Begley a covenant not to execute upon this judgment; and (2) Begley has repeatedly opposed all of CNA's efforts to reduce, or completely eliminate, this judgment by setoff.

## *DISCUSSION*

### 1. *CNA Has Standing to Appeal/CNA's Intervention Was Proper*

Code of Civil Procedure section 902 provides that "[a]ny party aggrieved" by a judgment or appealable order may file an appeal. Gray and Begley argue that CNA is neither a party, nor aggrieved. We disagree.

Respondents' first contention, that CNA is not a party, is easily addressed. The trial court granted CNA's motion to intervene. Respondents' argument that this motion was granted only "tentatively" is belied by the record; the trial court "sanctified" CNA as an intervener. As such, CNA "obtained all rights of a party defendant, including the right to appeal." (*Corridan v. Rose* (1955) 137 Cal.App.2d 524, 528 [290 P.2d 939].)

Respondents' next contention, that CNA is not aggrieved by the judgment or denial of its motion to vacate, is similarly meritless. CNA was permitted to intervene in order to pursue Begley's originally filed and ultimately withdrawn motion for setoff. The trial court's denial of CNA's motion to vacate, which prevented CNA's motion for setoff from being heard on the merits, surely affected CNA's interest and rendered it a party aggrieved. (*Corridan v. Rose, supra*, 137 Cal.App.2d at p. 528.)[16]

█ Respondents' real argument, although couched in an objection to CNA's standing to appeal, is a reassertion of the argument that CNA does not have a sufficiently immediate interest in this action to justify its intervention. Intervention is governed by Code of Civil Procedure section 387, subdivision (a). We review a trial court's order granting intervention for an abuse of discretion. (*Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459 [258 Cal.Rptr. 907].) "When the proper procedures are followed, the trial court has the discretion to permit a nonparty to intervene in litigation pending between others, provided that (1) the nonparty has a direct and immediate interest in the action; (2) the intervention will not enlarge the issues in the litigation; and (3) the reasons for intervention outweigh any opposition by the parties presently in the action." (*Noya v. A.W. Coulter Trucking* (2006) 143 Cal.App.4th 838, 842 [49 Cal.Rptr.3d 584].)

Respondents' main challenge to CNA's intervention is based on the first element—that CNA does not have a direct and immediate interest in the

---

[16] The court in *Corridan v. Rose, supra*, 137 Cal.App.2d at pages 529–531, ultimately concluded that the trial court did not err in granting a motion for new trial on the basis that an insurer had been improperly allowed to intervene because the insurer's interest in the litigation was remote and contingent. However, this did not undermine the court's conclusion that the insurer, which initially had been granted the right to intervene, was aggrieved by the new trial order and had standing to appeal it. (*Id.* at p. 528.)

action. Respondents' argument is based on the fact that CNA defended Begley under a reservation of rights; that is, CNA reserved the right to contest coverage for Begley. Respondents therefore argue that CNA's interest in the action is not direct and immediate, but is instead contingent on a subsequent determination that CNA's policy afforded coverage for Begley.

■ When an action asserting a claim for bodily injury or property damage is brought against an insured, and the insured tenders the defense to the insurer, there are three possible positions the insurer can take towards the request for coverage and a defense. An insurer can (1) admit coverage and provide a defense; (2) deny coverage and refuse to provide a defense; or (3) provide a defense under a reservation of rights to contest coverage. Case authority is clear as to the existence of an insurer's right to intervene in each of the first two situations. However, while some dicta address the third (and most common) situation, no published authority has clearly analyzed whether an insurer providing a defense under a reservation of rights may intervene to protect its own interests.

■ It is undisputed that if the insurer admits coverage, the insurer clearly has a direct and immediate interest in the outcome of the action against its insured, and therefore may intervene. "An insurer's right to intervene in an action against the insured, for personal injury or property damage, arises as a result of Insurance Code section 11580. Section 11580 provides that a judgment creditor may proceed directly against any liability insurance covering the defendant, and obtain satisfaction of the judgment up to the amount of the policy limits. [Citation.] Thus, where the insurer may[17] be subject to a direct action under Insurance Code section 11580 by a judgment creditor who has or will obtain a default judgment in a third party action against the insured, intervention is appropriate. [Citation.]" (*Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386–387 [100 Cal.Rptr.2d 807].)

■ It is also undisputed that if the insurer denies coverage *and* refuses to provide a defense, the insurer "does not have a direct interest in the litigation between the plaintiff and the insured to warrant intervention. The rationale behind this rule is that by its denial, the insurer has lost its right to control the litigation." (*Hinton v. Beck, supra*, 176 Cal.App.4th at p. 1384.) When an insurer refuses to defend, it may be bound by a default judgment against its insured (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 883–884

---

[17] The use of the word "may" in this context has been the cause of considerable confusion. An insurer denying coverage and refusing to provide a defense may ultimately be subject to a direct action, but such possible liability is insufficiently immediate to justify intervention. (*Hinton v. Beck* (2009) 176 Cal.App.4th 1378, 1385 [98 Cal.Rptr.3d 612].) We believe the court's use of the phrase "where the insurer may be subject to a direct action" is not meant to refer to those situations in which there is nothing more than a theoretical possibility that a direct action might be brought against the insurer.

[151 Cal.Rptr. 285, 587 P.2d 1098]), or a reasonable, noncollusive settlement reached by its insured with the claimant (*Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718, 728 [117 Cal.Rptr.2d 318, 41 P.3d 128] (*Hamilton*)). "An insurer that has received notice of the action against its insured but refuses to defend will be bound by the resulting judgment on all issues material to liability, in the absence of fraud or collusion." (*Tomassi v. Scarff* (2000) 85 Cal.App.4th 1053, 1058 [102 Cal.Rptr.2d 750], italics omitted.) " 'In effect, when the insured tenders the suit, the carrier is receiving its chance to be heard. Having rejected the opportunity and waived the chance to contest liability, it cannot reach back for due process to void a deal the insured has entered to eliminate personal liability.' " (*Hamilton, supra*, 27 Cal.4th at p. 728.)

■ While the *Hamilton* opinion discussed the situation of an insurer that does not provide a defense, it was actually concerned with an insurer that *did* defend. In that case, the insurer provided a defense, but refused a settlement within policy limits. The insured then settled the case without the insurer's participation, agreeing to a stipulated judgment in excess of policy limits and an assignment of the insured's right to proceed against the insurer, in exchange for a covenant not to execute against the insured. (*Hamilton, supra*, 27 Cal.4th at pp. 721–722.) In the subsequent action by the claimant against the insurer, the Supreme Court held that "settlements reached without the consent or participation of the defending insurer, and incorporating a covenant not to execute or similar device, are entitled to no weight in a later action against the insurer for failure to settle." (*Id.* at p. 726.) While a settlement reached without the participation of a *nondefending* insurer is presumptive evidence of liability and damages, no such presumption arises where "the insurer has *accepted* defense of the claim, and might have prevailed at trial had the insured and the claimant[] not settled without the insurer's participation . . . ." (*Id.* at p. 729.)

■ In other words, the key factor in determining whether an insurer is bound by a settlement reached without the insurer's participation is whether the insurer provided the insured with a defense, not whether the insurer denied coverage. (See *Safeco Ins. Co. v. Superior Court* (1999) 71 Cal.App.4th 782, 785, 787 [84 Cal.Rptr.2d 43] [holding that an insurer that defended under a reservation of rights was not bound by a settlement reached without its consent].) It therefore follows that an insurer providing a defense, even though subject to a reservation of rights, may intervene in the action when the insured attempts to settle the case to the potential detriment of the insurer. In contrast to the insurer that refuses to defend, an insurer providing a defense under a reservation of rights has not "lost its right to control the litigation" (*Hinton v. Beck, supra*, 176 Cal.App.4th at p. 1384), and therefore retains a direct interest in the case. (See also *Jade K. v. Viguri, supra*, 210 Cal.App.3d

at p. 1468 [upholding intervention, and right to vacate a default judgment, by an insurer that tendered a defense under a reservation of rights].)

Substantial confusion has entered the law, due to the case of *Corridan v. Rose, supra*, 137 Cal.App.2d 524 (*Corridan*). That case concerned the intervention of an insurer that had refused to defend unless the insured executed a bilateral agreement admitting that the defense would be provided without prejudice to the insurer's right to contest liability. As the insured refused to sign the reservation of rights, the insurer did not provide a defense. (*Id.* at p. 526.) Subsequently *Continental Vinyl Products Corp. v. Mead Corp.* (1972) 27 Cal.App.3d 543, 551 [103 Cal.Rptr. 806] (*Continental Vinyl*), which did not involve an insurer at all, cited *Corridan* for the proposition that "[a]n insurer which refused to defend except upon a reservation of rights has only a consequential interest not justifying intervention in an action against its insured." (*Continental Vinyl*, at p. 551.) While this description of the holding is technically correct, it gives the impression that *Corridan* held that an insurer *that defends under a reservation of rights* does not have a sufficient interest to justify intervention, when, in fact, *Corridan* was concerned with an insurer that did not defend.[18]

We conclude, therefore, that *Corridan* presents no bar to the conclusion that an insurer that provides a defense under a reservation of rights has a sufficient interest in the litigation to intervene when the insured reaches a settlement without the participation of the defending insurer. This is exactly what occurred in this case. Begley was defended by CNA, and moved to vacate the judgment in order to offset the Granite settlement against the judgment. Subsequently, Begley negotiated an agreement, without CNA's participation, whereby Gray would give Begley a covenant not to execute and additional unidentified consideration in exchange for Begley's withdrawal of his motion to vacate. CNA's interest in continuing to pursue the motion to vacate is not considered waived, as CNA defended Begley throughout trial.

The facts of this particular case underline the necessity of such a rule. Begley and Gray have now brought suit against CNA, alleging that Begley "has suffered economic damages including a judgment in excess of $4,5[00,000] against him." Yet Begley, due to a private agreement with Gray, withdrew his motion to vacate that judgment, while CNA sought intervention to continue to pursue the motion to vacate. This is analogous to the

---

[18] We note that although *Hinton v. Beck, supra*, 176 Cal.App.4th at pages 1383–1384 discussed the language in both *Corridan* and *Continental Vinyl* that appears to prohibit intervention by an insurer that defends under a reservation of rights, the *Hinton* court ultimately held that "an insurer who denies coverage and *refuses to defend its insured* does not have a direct interest in the litigation between the plaintiff and the insured to warrant intervention." (*Hinton v. Beck, supra*, 176 Cal.App.4th at p. 1384, italics added.)

circumstances presented in *Hamilton*. There, the insured settled with the plaintiff without the participation of the defending insurer, and the plaintiff then sought to rely on the settlement as evidence of the insurer's liability. The court disagreed, and stated that the settlement was entitled to no weight because the insurer might have prevailed at trial had the insured and the plaintiff not settled without the insurer's participation. In the instant scenario, Gray and Begley now seek to use the $4.5 million judgment as evidence against CNA in another litigation, yet CNA might have prevailed in reducing that judgment if Gray and Begley had not settled without CNA's participation. The trial court properly concluded that CNA should be permitted to intervene to pursue its attempt to reduce that judgment.[19]

### 2. *CNA Has the Right to a Hearing on Its Motion for Setoff*

CNA argues that it has the right to a hearing on its motion for setoff, as the trial court agreed. Although respondents challenge CNA's standing and the merits of CNA's motion for setoff, they do not argue that CNA does not have a right to be heard on its motion.[20] We agree that CNA has a right to be heard. The trial court erroneously entered judgment while Begley's original motion for setoff was pending, and should have vacated the judgment to permit CNA's setoff motion to be heard.

---

[19] Gray and Begley also contest the other two elements of intervention—arguing that intervention will greatly expand the issues in the litigation and that the reasons for denying intervention outweigh the interests in favor. We disagree. CNA's intervention will allow litigation of the setoff issue originally raised by Begley's motion to vacate. Begley suggests that CNA's intervention will also implicate issues of whether Begley and Gray engaged in collusive conduct and whether CNA provided an adequate defense. We fail to see where either issue is implicated by the simple question of whether the earlier settlement, to which CNA was a party, must be offset against the judgment. As to the final element, balancing the interests in favor of and opposed to intervention, the trial court did not abuse its discretion. Begley repeatedly argues that his agreement with Gray was simply an attempt to protect himself after CNA "abandoned" him. To the contrary, CNA provided Begley with a defense, and had the right to control that defense. (*Safeco Ins. Co. v. Superior Court, supra,* 71 Cal.App.4th at p. 787.) Its request for intervention was simply an attempt to pursue its defense—including a motion for setoff—after Begley chose to no longer comply with CNA's chosen strategy. Begley also argues that his interest in not being subject to the judgment outweighs CNA's right to intervene. However, he has never presented any court with any evidence that the covenant not to execute which he obtained from Gray becomes invalid upon CNA's intervention.

[20] We requested the parties to submit letter briefs on the issue of whether "the trial court erred in refusing to vacate the judgment for the purpose of hearing and ruling on [the] motion for setoff." In response, Begley argued only that CNA would have no right to setoff, while Gray argued that permitting the setoff would undermine Begley's purported right to settle with Gray to avoid personal liability. Neither of these arguments undermines CNA's right to be heard.

### 3. The Trial Court Must Resolve the Issues Relating to Offset in the First Instance

"Where a release . . . is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, . . . [¶] . . . it shall reduce the claims against the others in the amount stipulated by the release . . . ." (Code Civ. Proc., § 877.) CNA argues that Begley and Granite were claimed to be liable for the same tort (i.e., Begley's negligent driving which caused Gray's injuries), and that Gray's release of Granite in exchange for a payment of over $8 million must therefore reduce Gray's claim against Begley in that amount. As the release amount far exceeds the amount of the judgment, CNA contends the judgment must be vacated and a new judgment in the amount of zero dollars entered in its place.

In contrast, Gray argues that the settlement with Granite was for a different tort than Begley's driving (i.e., Granite had also been sued for negligent entrustment), and that, at the very least, as liability for noneconomic damages is several rather than joint (Civ. Code, § 1431.2), there should be no offset for noneconomic damages. More importantly, however, Gray argues that the negotiated release of Granite specifically excluded both Begley and CNA, with the intent that any judgment Gray subsequently obtained against Begley would be fully enforceable against CNA. These are arguments that should be addressed and resolved by the trial court in the first instance.

When a briefing schedule was contemplated, CNA indicated that it would require 30 days to prepare the necessary exhibits and declarations to support its motion for setoff. Gray's counsel also indicated that it would be necessary to depose various individuals surrounding the negotiation and execution of the release. It is apparent that numerous factual issues need to be resolved prior to the determination of the motion for setoff, and that the trial court is the proper forum in which this must occur.[21]

---

[21] In his postargument letter brief, Gray states that he withdrew his motions for prejudgment interest, costs, and attorney fees in consideration for Begley's withdrawal of his motion to vacate, and questions whether he will be permitted to refile those motions on remand (and whether such filing would breach his agreement with Begley). The terms and effect of any Gray/Begley agreement are not before this court and we express no opinion on them. (With respect to the issue of costs, however, we direct the parties' attention to the recent opinion in *Goodman v. Lozano* (2010) 47 Cal.4th 1327 [223 P.3d 77].) We hold only that as respects CNA, an insurer providing a defense, Begley's agreement with Gray to withdraw his motion to vacate has the same binding effect as a negotiated settlement with Gray to which CNA did not agree: *none*.

## *DISPOSITION*

The denial of the motion to vacate the judgment is reversed and the matter remanded to the trial court with directions to (1) vacate the judgment for the purpose of hearing and ruling upon CNA's motion for setoff, (2) consider and decide such motion, (3) thereafter enter a new judgment in accordance with such ruling and (4) conduct such further proceedings as may be appropriate and consistent with the views expressed herein. CNA shall recover its costs on appeal from Gray and Begley.

Klein, P. J., and Aldrich, J., concurred.

The petition of respondent Steven W. Gray for review by the Supreme Court was denied June 17, 2010, S182330.