Filed 5/1/15  The Belmont Companies v. Western Royalty Ins. Services CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE BELMONT COMPANIES,<br><br>    Cross-complainant,<br><br>v.<br><br>WESTERN ROYALTY INSURANCE SERVICES, INC.,<br><br>    Cross-defendant and Respondent;<br><br>JOHN MARTONI et al.,<br><br>    Movants and Appellants. | B254441<br><br>(Los Angeles County<br>Super. Ct. No. BC437338) |

APPEAL from an order of the Superior Court of Los Angeles County.  Ronald M. Sohigian, Judge.  Affirmed.

_____

Joshua R. Furman for Movants and Appellants.

Wilson, Elser, Moskowitz, Edelman & Dicker and Ian A. Stewart for Cross-defendant and Respondent.

_____

John and Patricia Martoni appeal from the order denying their motion for leave to file a complaint in intervention in a cross-action for indemnity brought by the Belmont Companies (Belmont) against Western Royalty Insurance Services, Inc. (Western Royalty).  The Martonis contend that the denial of the motion constituted an abuse of discretion.  We disagree and thus affirm order.

## FACTUAL AND PROCEDURAL BACKGROUND

1.    *The Wrongful Death Action and the Declaratory Relief Action and Cross-action*

In 2008, the Martonis' son was killed when shot by Stanley Park.  In 2009, the Martonis sued Park and the Belmont Companies, among others, for wrongful death. (*Martoni v. Park* (Super. Ct. Los Angeles County, 2009, No. NC053835).)  The Belmont Companies, which owned and operated the bar outside where the son had been shot, tendered defense of the action to Landmark American Insurance Company (Landmark), its general liability carrier.  Landmark defended the action under a reservation of rights.

Landmark instituted this case against Belmont in 2010 seeking a declaration that it had no duty to defend or indemnify Belmont in the wrongful death action because its policy contained an exclusion for assault and battery coverage.  Later in 2010, Belmont filed a cross-action against Western Royalty Insurance Services, Inc., its insurance broker, alleging that Western Royalty had assured Belmont that assault and battery coverage was included in its policy with Landmark.  In 2011, Landmark moved for summary judgment, which the trial court granted, and obtained a judgment providing that it had no duty to defend or indemnify Belmont in the wrongful death action.  Landmark withdrew its defense of Belmont in the wrongful death action.  At some point, Belmont's liquor liability carrier began defending Belmont in the wrongful death action, although the terms of that defense are not clear from the record.[1]

_____

[1]    Western Royalty asserts that Belmont has not suffered any damages as a result of the lack of assault and battery coverage in Landmark's liability policy because its liquor liability carrier picked up its defense in the wrongful death action once Landmark withdrew a defense.

2

2.    *The Bankruptcy Action and the Motion for Leave to File a Complaint in Intervention*

In 2012, Belmont filed a Chapter 11 bankruptcy petition. The case was converted to one under Chapter 7 in 2013, and the bankruptcy court appointed a trustee for Belmont's estate. In June 2013, the Martonis moved in the bankruptcy court for relief from the automatic stay to pursue their wrongful death action against Belmont and as well as a claim in Belmont's cross-action against Western Royalty. While the Martonis' motion was pending, the trustee moved in the bankruptcy court for authority to compromise Belmont's claim against Western Royalty. The trustee did not oppose the Martonis' request for relief from the automatic stay to pursue their wrongful death action but did oppose their request to pursue a claim in Belmont's cross-action against Western Royalty. The Martonis maintained that the trustee's proposed compromise with Western Royalty, in the amount of $10,000, was too low and that Belmont's claim against Western Royalty was worth more. In August, the bankruptcy court granted the Martonis' motion for relief from the automatic stay to pursue their wrongful death action against Belmont, permitting enforcement of any final judgment against Belmont through collection upon available insurance. It denied the trustee's motion for authority to compromise without prejudice, affording the Martonis an opportunity to make an offer to the trustee for Belmont's claim against Western Royalty. And it allowed the Martonis to move to file a complaint in intervention in Belmont's cross-action against Western Royalty.

Soon after, in September, the trustee settled Belmont's claim against Western Royalty for $20,000. The settlement agreement indicated that the settlement was subject to bankruptcy court approval as well as to higher and better bids. In October, the trustee filed a second motion for authority to compromise in the bankruptcy court, noting that the settlement amount was now $20,000 and representing that the terms of the settlement were in the best interest of Belmont's estate and creditors and in good faith given the potential defenses and maximum amount of damages of $100,000 (the limit of the assault and battery coverage had it been procured). The trustee explained that, "because

3

creditors [the Martonis] previously [had] opposed the [t]rustee's compromise with Western [Royalty] and made the [t]rustee a competing offer previously, the settlement with Western [Royalty] is subject to overbid, to allow the Martonis, or any other interested party, an opportunity to purchase the estate's claims at the hearing on the [m]otion." According to the trustee, the Martonis were interested in a settlement that involved the trustee stipulating to a judgment in favor of the Martonis in Belmont's action against Western Royalty in the amount of $125,000, with a partial cash payment to the trustee and an assignment to them of the trustee's right to pursue Belmont's claim against Western Royalty. The trustee decided to accept Western Royalty's $20,000 settlement offer and did not further pursue a settlement with the Martonis.

At a hearing on November 14, the bankruptcy court, over opposition by the Martonis, granted the trustee's motion for authority to compromise Belmont's claim against Western Royalty. About a week after the hearing, but before entry of the order, the Martonis filed in this case a motion under Code of Civil Procedure section 387, subdivision (a)[2] for leave to file a complaint in intervention in Belmont's cross-action against Western Royalty. Western Royalty opposed the motion. On December 5, the bankruptcy court entered its order granting the trustee's motion for authority to compromise. In the order, the bankruptcy court approved the settlement with Western Royalty and allowed the trustee to effectuate the settlement agreement, including dismissal of Belmont's cross-action against Western Royalty. The bankruptcy court also noted that no overbids on the settlement had been received.

On December 18, the trial court denied the Martonis' motion for leave to file a complaint in intervention. The Martonis timely appealed. (*Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 547 ["order denying a motion for leave to intervene is directly appealable because it finally and adversely determines the moving party's right to proceed in the action"].)

---

[2]     Statutory references are to the Code of Civil Procedure.

4

## DISCUSSION

Under section 387, subdivision (a), which governs permissive intervention, "[u]pon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding." Permissive intervention, gives the trial court discretion to allow intervention when the proposed intervenor follows the proper procedures for intervention provided that (1) he or she "has a direct and immediate interest in the litigation, (2) the intervention will not enlarge the issues in the case, and (3) the reasons for intervention outweigh opposition by the existing parties. [Citation.]" (*Hinton v. Beck* (2009) 176 Cal.App.4th 1378, 1382-1383.) "The standard of review for an order denying leave to intervene under section 387, subdivision (a) is abuse of discretion. [Citations.]" (*Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164 Cal.App.4th 1416, 1428.)

"Assuming the proper procedures have been followed, the threshold question under section 387, subdivision (a) is whether the party seeking discretionary intervention has a direct and immediate interest in the action. [Citation.] 'The requirement of a direct and immediate interest means that the interest must be of such a direct and immediate nature that the moving party "'will either gain or lose by the direct legal operation and effect of the judgment.' [Citation.]" [Citations.]' [Citation.] 'Conversely, "[a]n interest is consequential and thus insufficient for intervention when the action in which intervention is sought does not directly affect it although the results of the action may indirectly benefit or harm its owner." [Citation.]' [Citation.]" (*Siena Court Homeowners Assn. v. Green Valley Corp.*, *supra*, 164 Cal.App.4th at p. 1428; *Continental Vinyl Products Corp. v. Mead Corp.* (1972) 27 Cal.App.3d 543, 549-550 ["person has a direct interest justifying intervention in litigation where the judgment in the action of itself adds to or detracts from his legal rights without reference to rights and duties not involved in the litigation"; "interest is consequential and thus insufficient for intervention when the action in which intervention is sought does not directly affect it

5

although the results of the action may indirectly benefit or harm" the proposed intervenor].)

The denial of the Martonis' motion for leave to file a complaint in intervention in Belmont's cross-action against Western Royalty was not an abuse of discretion. The Martonis, as a potential creditor of Belmont based on the wrongful death action, did not establish the threshold requirement of a direct and immediate interest in the litigation for permissive intervention. At the time of the proposed intervention, Belmont's cross-action against Western Royalty—the action in which the Martonis sought intervention—had been settled and the bankruptcy court had approved that settlement, which allowed the trustee to dismiss the action. Since then, the action was dismissed. The Martonis participated in the proceedings before the bankruptcy court. Although the Martonis had the opportunity to bid over the settlement amount to purchase Belmont's claim against Western Royalty, they declined to do so. Under these circumstances, no basis existed for permissive intervention. (*Continental Vinyl Products Corp. v. Mead Corp.*, *supra*, 27 Cal.App.3d at p. 553 [no direct interest in litigation pursued by bankruptcy trustee even though success in the litigation assertedly would increase value of proposed intervenor's stock; if trustee chose to settle action, proposed intervenor would have opportunity to object and assert position in bankruptcy court proceeding for approval of the settlement]; *Siena Court Homeowners Assn. v. Green Valley Corp.*, *supra*, 164 Cal.App.4th at p. 1429 [proposed intervenor's claim to 48 percent interest in any recovery obtained by the plaintiff did not show a direct interest in the litigation because the judgment would not affect the proposed intervenor's obligations and indirect benefit or harm to proposed intervenor was "'consequential and thus insufficient for intervention'"].)[3]

---

[3]    The Martonis contend that the trial court's order indicating that the grounds for its denial of their motion were "as fully reflected in [Western Royalty's] opposing papers" demonstrates an abuse of discretion because Western Royalty was a suspended corporation when it filed its opposition and improperly relied on an unpublished, non-citable opinion, although Western Royalty did argue that the Martonis had not shown the requisite direct interest in the litigation for permissive intervention. In any case, as the

6

## DISPOSITION

The order is affirmed.  Western Royalty is entitled to its costs on appeal.

NOT TO BE PUBLISHED.


                                        ROTHSCHILD, P. J.
We concur:


        JOHNSON, J.


        BENDIX, J.*

---

moving parties, the Martonis were required to establish the requirements for permissive intervention, which they did not do.  Thus, even if there were issues with Western Royalty's opposition, the denial of the Martonis' motion was not an abuse of discretion.

*        Judge of the Los Angeles Superior Court, Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.