[No. B221016. Second Dist., Div. Six. Feb. 28, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
SERGIO JACOBO RAMOS, Defendant and Appellant.

COUNSEL

Richard C. Gilman, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Steven D. Matthews and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GILBERT, P. J.**—The crime of murder does not always require specific intent to kill. The crime of attempted murder does. CALCRIM No. 600 clearly explains that the crime of attempted murder requires the specific intent to kill. An explanation of express malice is unnecessary and likely confusing.

Sergio Jacobo Ramos appeals a judgment following conviction of attempted murder (count 1) and assault with a semiautomatic firearm (count 2), with findings of personal firearm use and discharge. (Pen. Code, §§ 664, 187, subd. (a), 245, subd. (b), 12022.5, subd. (a), 12022.53, subd. (c).)[1] We affirm.

### FACTS AND PROCEDURAL HISTORY

In the late evening of May 18, 2008, Maria Ramos heard noises outside the family home in Ojai and saw a gray- or black-colored truck. She walked outside and noticed that the windows in two of the family's vehicles had been broken. Ramos awoke her family members and then reported the vandalism to law enforcement.

After 2:00 a.m. on May 19, 2008, William Kyle Hoffman escorted guests outside following a party at his Short Street residence in Oak View. He saw two vehicles parked on the opposite side of the street. He then heard gunshots "whistling" past him. He ran down the street and jumped a neighbor's backyard gate. In all, he heard seven gunshots but did not see the person firing the weapon or the weapon. The vehicles "screech[ed] away" afterwards.

Hoffman owned a gray-colored pickup truck that was parked near his home. Sheriff's deputies later found seven .22-caliber shell casings nearby. A neighbor's vehicle sustained window damage from the gunshots.

Jessica Manning was present in the Ramos home the evening of May 18. She later informed sheriff's deputies that the three Ramos brothers, including Sergio, left the home after the vandalism to the family vehicles. When they returned, Sergio stated that he had "posted up in Oak View" and shot seven times. Deputies recorded Manning's interview and the prosecutor played the recording at trial. Manning testified at trial, however, that she lied to deputies to protect her boyfriend, Jose Ramos.

---

[1] All further statutory references are to the Penal Code.

On June 19, 2008, sheriff's deputies interviewed Jose Ramos. He stated that Sergio drove to Short Street and fired a gun five or six times toward a silver pickup truck similar to the truck involved in the vandalism. At trial, Jose recanted his statements.

In March 2009, sheriff's deputies arrested Jose Lopez for possession of a firearm. Lopez stated that Sergio Ramos borrowed the weapon from him in May 2008. A firearms examiner tested the firearm and concluded that it fired the shell casings found near Hoffman's Short Street residence.

The jury convicted Ramos of attempted murder (count 1) and assault with a semiautomatic firearm (count 2), and found the personal firearm use and discharge enhancements true. (§§ 664, 187, subd. (a), 245, subd. (b), 12022.5, subd. (a), 12022.53, subd. (c).) The trial court sentenced Ramos to a 27-year prison term, imposed various fines and fees, and awarded him 73 days of presentence custody credit. The court imposed but stayed sentence for count 2, pursuant to section 654.

Ramos appeals and contends that (1) the trial court did not sufficiently instruct regarding attempted murder, and (2) insufficient evidence supports the judgment.

## DISCUSSION

## I.

Ramos argues that CALCRIM No. 600, as given by the trial court, did not instruct regarding the target crime of murder. He points out that the predecessor instruction concerning attempted murder, CALJIC No. 8.66, defined murder as "the unlawful killing of a human being with malice aforethought." Ramos asserts that the error impermissibly lightened the prosecutor's burden of proving every element of the crime beyond a reasonable doubt.

CALCRIM No. 600 provides: "The defendant is charged in Count 1 with attempted murder. [¶] To prove that the defendant is guilty of attempted murder, the People must prove that: [¶] 1. The defendant took at least one direct but ineffective step toward killing [the victim]; [¶] AND [¶] 2. The defendant intended to kill that person. [¶] A direct step requires more than merely planning or preparing to commit murder or obtaining or arranging for something needed to commit murder. A direct step is one that goes beyond planning or preparation and shows that a person is putting his or her plan into

action. A direct step indicates a definite and unambiguous intent to kill. It is a direct movement toward the commission of the crime after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt."

■ CALCRIM No. 600 correctly states the law of attempted murder. (*People v. Lawrence* (2009) 177 Cal.App.4th 547, 557 [99 Cal.Rptr.3d 324].) Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing. (*People v. Smith* (2005) 37 Cal.4th 733, 739 [37 Cal.Rptr.3d 163, 124 P.3d 730].)

To instruct on the definition of malice is unnecessary and confusing because CALCRIM No. 600 is a complete and adequate instruction. Unlike the crime of murder, the crime of attempted murder requires the specific intent to kill. (*People v. Smith, supra*, 37 Cal.4th 733, 739 [murder may be committed with implied malice, i.e., a conscious disregard for life].) "Intent to unlawfully kill and express malice are, in essence, 'one and the same.' " (*Ibid.*) Moreover, the crime of attempted murder is not divided into degrees and a finding of willful, deliberate, and premeditated attempted murder is necessary only for purposes of sentence enhancement. (*Id.* at p. 740.) The trial court did not err.

## II.

Ramos contends there is insufficient evidence of his intent to kill because the evidence established that he fired gunshots from a distance during nighttime. (*People v. Smith, supra*, 37 Cal.4th 733, 739 [attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the killing].) He adds that a conviction based upon insufficient evidence violates due process of law.

In reviewing the sufficiency of evidence to support a conviction, we review the entire record to determine whether there is reasonable and credible evidence such that a reasonable trier of fact could find defendant guilty beyond a reasonable doubt. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1014–1015 [81 Cal.Rptr.3d 299, 189 P.3d 300].) We view the evidence and draw all reasonable inferences therefrom in favor of the judgment. (*Id.* at p. 1015 [reviewing court must accept logical inferences drawn from the evidence even if it would conclude otherwise].) We do not reevaluate witness credibility nor do we reweigh the evidence. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129 [40 Cal.Rptr.3d 118, 129 P.3d 321].) The same standard of review applies to prosecutions relying upon circumstantial evidence of guilt. (*Ibid.*)

■   Evidence of intent to kill is usually inferred from defendant's acts and the circumstances of the crime. (*People v. Smith, supra*, 37 Cal.4th 733, 741.) Firing a gun toward a victim at a close range in a manner that could have inflicted a mortal wound had the bullet been on target supports an inference of intent to kill. (*Ibid.*)

■   Sufficient evidence supports the finding of intent to kill. Hoffman testified that he heard gunshots "whistling past [him], so [he] ran the other way." Ramos fired seven times at Hoffman as he ran. Although Ramos may have been a distance away, the gunshots "whistled" past Hoffman and could have inflicted a mortal wound had Ramos's marksmanship been better. The trier of fact reasonably drew the inference of intent to kill from the evidence. (*People v. Smith, supra*, 37 Cal.4th 733, 741; *People v. Lawrence, supra*, 177 Cal.App.4th 547, 557 ["[W]hether a defendant harbored the required intent to kill must be inferred from the circumstances of the act."].)

The judgment is affirmed.

Coffee, J., and Perren, J., concurred.