Filed 1/28/16  P. v. Rodriguez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESUS LEYVA RODRIGUEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B256431<br>(Super. Ct. No. 2012014196)<br>(Ventura County) |

Jesus Leyva Rodriguez appeals his conviction, by jury, of the April 2012 attempted murder of Benny Huerta (Pen. Code, §§ 664, 187, subd. (a))[1], assault with a semi-automatic firearm (§ 245, subd. (b)), and resisting arrest.  (§ 148, subd. (a)(1).)  The jury found that appellant personally used and personally discharged a firearm in committing the attempted murder and assault, that he personally inflicted great bodily injury on Huerta, and that he committed the offenses for the benefit of a criminal street gang, Colonia Chiques.  (§§ 12022.5, subd. (a)(1); 12022.53, subd. (d); 12022.7; 186.22, subd. (b)(1).)  It was unable to reach a verdict on additional charges that appellant engaged in street terrorism (§ 186.22, subd. (a)), and that he committed assault with a deadly weapon, a knife.  (§ 245, subd. (a)(1).)  The trial court sentenced appellant to an aggregate term of 44 years to life as follows: a determinate term of 9 years on the

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

1

attempted murder conviction, plus a consecutive term of 25 years to life for the section 12022.53, subdivision (d) firearm enhancement, plus a consecutive term of 10 years for the section 186.22, subdivision (b) gang enhancement.

Appellant contends there is no substantial evidence he had the mental state required to commit attempted murder or that he acted for the benefit of a criminal street gang. He further contends the trial court abused its discretion when it imposed the upper term of 9 years on his attempted murder conviction. We affirm.

*Facts*

Benny Huerta grew up in the Ventura Avenue neighborhood of Ventura, California. Although he had been a member of Ventura Avenue Gangsters in his youth, Huerta testified he left the gang in 1995. On the evening of April 17, 2012, Huerta was walking on McFarlane Avenue toward his parked car, after visiting his friend, Christopher Hannegan. Two men approached Huerta before he reached his car. They exchanged words and a fist fight broke out. Within moments, Hannegan heard two gun shots. The two men ran away as Huerta stumbled down the street, looking for help. Blood was gushing from what turned out to be a stab wound to Huerta's right arm. He had also been shot twice in the torso. One bullet went through his stomach and exited the left side of his back. The other entered Huerta's right flank area and lodged in his pelvis. Onlookers came to Huerta's aid while Hannegan called 911. Hannegan told the responding police officers that one of the men was wearing a Rams football jersey and black pants. The other man was wearing a Dodgers baseball cap.

Huerta told the responding police officer that he was walking down McFarlane when two men approached him and asked him where he was from. Huerta responded that he was from Ventura and was not a gang member. The two men shot and stabbed Huerta and then ran away.

The shooting occurred at about 6:50 p.m., while it was still light outside. Sara Morales had picked up her children from her mother-in-law's house on McFarlane and was sitting in her car with them when she saw two men and a woman walk past. She heard yelling and the sound of people fighting. Morales looked in the side mirror of her

2

car and saw the two men who had just passed her fighting with a third man in the street, in front of her mother-in-law's house. Then she heard two gunshots. Morales started her car, drove around the block and parked on Ventura Avenue. While she was parked, she saw the same two men from the shooting run down Ventura Avenue toward the Red Barn Liquor store. One was carrying a shirt in his hands. Morales called 911 and reported what she had seen.

Surveillance camera video from the Red Barn Liquor Store on Ventura Avenue shows appellant and Ricardo Juarez run across the store's parking lot at about 6:52 p.m. Juarez is carrying a dark shirt in his hand. Before he enters the store, Juarez stashes the shirt behind a scale that is standing near the store's front door. Once inside, the men convince a customer to lend them his cell phone. Appellant talks with other customers while Juraez makes a call and paces back and forth near the front door. They leave the store three minutes later, running down Sunnyway Drive, a side street. Appellant and Juarez were arrested a few blocks away from the liquor store, while hiding behind an apartment building.

About one week later, on April 25, a homeowner who lived on Sunnyway Drive was trimming the high, thick grass and weeds in his front yard when he found a handgun lying near a fence. The gun was a .25 caliber semiautomatic handgun with two rounds missing from its seven-round magazine. Analysis later determined that cartridge casings found at the scene of the shooting had been fired from this gun. DNA testing of samples from the gun leads to the conclusion that appellant could have contributed to the matter, but excluded Juarez and the victim, Huerta, as contributors.

Officers also recovered the sports jersey that Juarez stashed near the front door of the Red Barn Liquor store. An analysis of blood splattered on the jersey determined that Huerta was included as a major contributor to the DNA profile while appellant and Juarez were excluded as major contributors. A blue Dodgers cap, and black Dodgers cap, and a black sweatshirt were recovered near the site of appellant's arrest. Huerta was the major contributor of blood that stained the black baseball cap;

3

Juarez was a possible contributor of DNA found on the inside front rim of the cap. Appellant tested positive for gunshot residue on his hands; Juarez did not.

At the time of the shooting, Juarez and appellant were staying on East McFarlane with Juarez's girlfriend and her family. Sometime between 10:00 p.m. on April 16, 2012 and about 8:00 a.m. on the April 17, the walls of a nearby parking structure were tagged with graffiti consisting of the names "Goofy," and "Slings 3" and the word "vasura." Appellant goes by the moniker "Slings 3." Juarez is known as "Goofy."

A detective from the Ventura Police Department testified that the shooting occurred in a neighborhood "claimed" by the Ventura Avenue Gangsters, a street gang. Huerta was a known member of that gang in the early 1990s. Rival gangs sometimes refer to Ventura Avenue Gangsters by the derogatory term, "vasura," a reference to the Spanish word for trash.

Cody Collet, a detective from the Oxnard Police Department, testified as an expert witness on the Colonia Chiques gang and on gang culture in general. He explained that gang members commit crimes and acts of violence to earn respect from one another, to promote the gang and to spread fear and intimidation in the community. Members of Colonia Chiques often wear Dallas Cowboys clothing and use the Cowboys' star in tattoos, writing and graffiti.

Detective Collet opined that appellant was a member of Colonia Chiques at the time of the shooting. Appellant had three other contacts with law enforcement. On each occasion, he was associating with admitted Colonia Chiques members. He also has a five-pointed star tattooed on either side of his head and another tattoo that reads, "CO Boy," a reference to the gang. His cell phone stored numerous photos of appellant with other Colonia Chiques members, in which all of the subjects are wearing gang-related clothing and displaying gang hand signs. The screensaver on appellant's cell phone is a photograph of a Colonia street sign. In a video posted to You Tube, appellant and Juarez rap together about the Colonia gang and their willingness to use guns and violence on its behalf.

4

*Standard of Review*

Appellant contends his conviction of attempted murder is not supported by substantial evidence that he intended to kill Huerta. He further contends the gang enhancement is not supported by substantial evidence that he acted for the benefit of a criminal street gang.

In evaluating these claims, we apply a familiar standard of review: " '[W]e review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime ... beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" [Citation.] A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict. [Citation.]' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87, quoting *People v Zamudio* (2008) 43 Cal.4th 327, 357.)

Evidence of a defendant's state of mind "is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.) The trier of fact may infer a defendant's intent to kill from his or her acts and the circumstances of the crime. (*People v. Avila* (2009) 46 Cal.4th 680, 701.) In reviewing the judgment for substantial evidence, we are required to accept logical inferences that the jury might have drawn from the circumstantial evidence. "Where the circumstances reasonably justify the trier of fact's

5

findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*People v. Zamudio, supra,* 43 Cal.4th at pp. 357-358.)

*Discussion*

*Substantial Evidence of Attempted Murder*

Appellant contends there is no substantial evidence he intended to kill Huerta because neither of the shots he fired penetrated a vital organ. Appellant was standing in close proximity to Huerta at the time, but did not take advantage of that circumstance to fire additional shots, ensuring Huerta's death.

The mental state required for attempted murder differs from that required for murder itself. (*People v. Smith* (2005) 37 Cal.4th 733, 736.) Murder maybe proved with evidence of implied malice, e.g., actions taken with a conscious disregard for life. (*Id.*) Attempted murder, however, requires proof that the defendant harbored express malice – the specific intent to kill the victim – and committed a direct but ineffectual act toward accomplishing that intended killing. (*People v. Perez* (2010) 50 Cal.4th 222, 229; *People v. Ramos* (2011) 193 Cal.App.4th 43, 47.) Express malice may be proved with evidence that appellant either desired Huerta's death or knew to a substantial certainty that Huerta's death would occur as a result of appellant's actions. (*People v Smith, supra,* 37 Cal.4th at p. 739.) As our Supreme Court recently emphasized, "The act of shooting a firearm toward a victim at close range in a manner that could have inflicted a mortal wound had the shot been on target is sufficient to support an inference of an intent to kill." (*People v. Houston* (2012) 54 Cal.4th 1186, 1192, see also *People v. Smith, supra*, 37 Cal.4th at p. 739 [same].)

Here, appellant was standing within a few feet of Huerta when he drew a firearm from his pocket and fired two shots into Huerta's torso. The shots, fired at close range, inflicted wounds that would have been fatal had Huerta not received almost immediate medical attention. These facts support the logical inference that appellant acted with the specific intent to kill when he shot Huerta.

6

Appellant fired two shots and then ran away without checking to make sure Huerta was dead. This fact does not negate his intent to kill. As our Supreme Court reasoned in *Smith*, the fact that a shooter fires a few times and then abandons his efforts " ' "out of necessity or fear does not compel the conclusion that he lacked the animus to kill in the first instance. Nor does the fact that the victim may have escaped death because of the shooter's poor marksmanship necessarily establish a less culpable state of mind." ' " (*People v. Smith, supra,* 37 Cal.4th at p. 741, citations omitted. See also *People v. Houston, supra,* 54 Cal.4th at p. 1218 [survival of some victims of mass high school shooting does not negate shooter's intent to kill]; *People v. Ramos, supra,* 193 Cal.App.4th at p. 48 [sufficient evidence of intent to kill where gunshots would have inflicted mortal wound had defendant's "marksmanship been better."].)

*Substantial Evidence Supports Criminal Street Gang Enhancement*

Appellant contends there is no substantial evidence he acted for the benefit of a criminal street gang. We disagree. Colonia Chiques is a criminal street gang within the meaning of section 186.22. (*People ex rel. Totten v. Colonia Chiques* (2007) 156 Cal.App.4th 31.) Appellant has symbols associated with Colonia Chiques tattooed on his head and chest. His cell phone stored pictures of himself with other known gang members. Appellant and Juarez were staying in the geographic "territory" of a rival gang and, the night before, had tagged a nearby wall with graffiti insulting to that gang. Before the assault on Huerta began, appellant and Juarez issued the common gang challenge, "Where you from?" Then, they acted together to shoot and stab him. Detective Collet testified that, in his opinion, a shooting like the one at issue here would have been gang related because it involved gang members acting together to assault a potential rival in a hostile neighborhood. The attack would have been seen by others as a way to increase "respect" for, or fear of their gang. This constitutes substantial evidence from which a reasonable jury could infer that appellant acted for the benefit of Colonia Chiques when he shot Huerta. (*People v. Albillar* (2010) 51 Cal.4th 47, 62.)

7

*Sentencing Error*

The trial court sentenced appellant to the upper term of nine years on the attempted murder conviction. It reasoned, "The crime involved great violence, great bodily harm and [a] high degree of cruelty and viciousness. The victim was vulnerable 'cause he was walking down the street minding his own business . . . . It appears to the court that the crime did indicate sophisticated planning or some sort of knowledge of how all this was supposed to occur." Appellant contends this was an abuse of discretion because the aggravating factors on which the trial court relied were encompassed within the elements of the crime and the enhancements. For example, appellant argues, "great violence was part and parcel of the use of a semi-automatic firearm, and part of the crime of attempted murder itself." Similarly, he contends the trial court should not have relied on great bodily injury as an aggravating factor because the jury found true a great bodily injury sentencing enhancement. (§ 12022.7.) We are not persuaded.

First, appellant forfeited this claim because he did not object on this basis in the trial court. (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751.) Appellant's trial counsel requested that the trial court impose the lower term because of appellant's youth, and insignificant criminal record. Counsel did not object on the basis now asserted as error: that the aggravating circumstances relied by the trial court were identical to the elements of the crime and imposed enhancements.

Had the claim not been forfeited, we would reject it because the trial court did not abuse its discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) In deciding whether to impose the upper term for an offense, the trial court may not rely on a "fact that is an element of the crime upon which punishment is being imposed . . . ." (Cal. Rules of Court, rule 4.420(d).) Additionally, "the court may not impose an upper term using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b), see also Cal. Rules of Court, rule 4.420(c).) The sentence imposed by the trial court complied with both of these rules.

The aggravating factors of "great violence," "high degree of cruelty," and victim vulnerability are not elements of the offense of attempted murder. (§ 664, subd.

8

(a); *People v. Perez, supra,* 50 Cal.4th at p. 229.) Similarly, to find true the section 12022.53, subdivision (d) enhancement, the jury had to find that appellant personally discharged a firearm causing great bodily injury. While this enhancement necessarily requires appellant to engage in some level of violence, it does not require "great" violence or a high degree of cruelty. The trial court's use of these aggravating circumstances did not violate rule 4.420.

We reject appellant's contention that the aggravating circumstances of cruelty, victim vulnerability, and sophistication and planning are not supported by the evidence. Appellant acted in concert with Juarez, while both of them were armed, to assault an unarmed, unsuspecting passerby. Hours earlier, they signaled their intention to do violence by tagging a nearby wall with insulting, gang graffiti. These facts support the aggravating circumstances found by the trial court and its decision to impose the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 813 [a single aggravating circumstance will support an upper term sentence].)

*Conclusion*

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.

9

Jeffrey Bennett, Judge

Superior Court County of Ventura

———————————————

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.